DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| LW RETAIL ASSOCIATES LLC, | Case No. 17-45189 (ess) |
| Debtor. |  |

----------------------------------------------------------------X

### DEBTOR'S APPLICATION FOR AN ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363(c)(2) AND BANKRUPTCY RULE 4001; (II) PROVIDING ADEQUATE PROTECTION THEREFORE; and (III) DETERMINING THE DEBTOR IS IN COMPLIANCE WITH 11 U.S.C. §362(d)(3)

LW Retail Associates LLC, (the "Debtor"), the above captioned debtor and debtor-in-possession, by its proposed attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, file this motion (the "Motion") for an Order (I) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. §363; (II) Providing Adequate Protection Therefor Pursuant to 11 U.S.C. §§361 and 362; and (III) Determining the Debtor is in Compliance with 11 U.S.C. §362(d)(3), respectfully represents as follows:

### Jurisdiction

1.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are §§ 105(a), 361, 362(d)(3)

1

and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rules 4001, 6004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

3.     On October 5, 2017, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed.

4.     The Debtor was formed in Kings County, New York in 2013, and operates from its offices located at 132 Remsen Street, Brooklyn, New York 11201.

5.     The Debtor is a Single Asset Real Estate debtor as defined in 11 U.S.C. §101(51B) because although the real property owned by the Debtor is not a single "property", it arguably is a single "project".

6.     The Debtor owns four commercial condominium units (the "Commercial Units") in two connected buildings known as the Loft Space Condominium located at 78 and 80-82 Leonard Street, New York, New York and 79-81 Worth Street New York, New York. The Commercial Units are occupied by a Crunch gym, a restaurant, a hair salon and offices.

7.      The Debtor is also the successor-sponsor of the Loft Space Condominium pursuant to amendment to the Condominium Offering Plan.

8.     The filing of this chapter 11 case was caused by protracted litigation with the Board of Managers of the Loft Space Condominium (the "Board") concerning disputed assessments to commercial and residential portions of the buildings.  The recent entry of an order

appointing a temporary receiver threatened to terminate the Debtor's access to rents from the Commercial Units necessary to pay the mortgage, real estate taxes and other expenses related to the Commercial Units.

9.      The Debtor intends to utilize the bankruptcy process to resolve its disputes with the Board, restructure and reorganize its affairs, and to propose a plan of reorganization that is in the best interests of its creditors and affords them the greatest recovery possible.

**Pre-Petition Secured Debt:**
**Consensual Mortgage with National Bank of New York City**

10.      On or about October 2, 2015, the Debtor entered into an Amended and Restated Mortgage Note and a Note Modification Agreement (collectively, the "Note") with National Bank of New York City ("NBNYC") pursuant to which, NBNYC extended credit to the Debtor in the amount of $6,250,000 at an interest rate of three and a half percent (3.5%). The Note provides for payments, amortized on a 30-year schedule, in the amount of $28,246.89 per month. The Note has a maturity date of November 1, 2020, which date may be extended for up to two five-year terms. There is currently approximately $6,027,685.21 outstanding on the Note. A copy of the Note is annexed as **Exhibit A.**

11.      To secure the Debtor's obligations under the Note, on or about October 2, 2015, the Debtor entered into with NBNYC an Agreement of Assumption of Note and Mortgage Consolidation of Notes and Mortgages and Modification of the Consolidated Mortgage (the "Mortgage and Security Agreement") which grants NBNYC a mortgage and security interest on the following property, as described in more detail therein (the "Property"):

    a.  The Premises

    b.  All buildings and improvements located on the Premises

    c.  All easements, rights-of-way, gores of land, streets…

    d. All machinery, apparatus, equipment, fittings, fixtures and other property of every kind and nature whatsoever owned by the Mortgagor, or which the Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property…

    e. All awards or payments, including interest thereon, and the right to receive same, which may be made with respect to the Mortgaged Property…

    f. All leases and other agreements affecting the use or occupancy of the Mortgaged Property now or hereafter entered into and the right to receive and apply the rents, issues and profits of the Mortgaged Property to the payment of the Debt.

    g. All proceeds of an any unearned premiums on any insurance policies covering the Mortgaged Property.

    h. The right, in the mane and on behalf of the Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property, and to commence any action or proceeding to protect the interest of the Mortgagee in the mortgaged Property.

A copy of the Mortgage and Security Agreement is annexed as **Exhibit B.**

12. The Mortgage and Security Agreement also grants NBNYC a lien on, security interest in, and right of set-off of all moneys, securities and other property of the Debtor and the proceeds thereof.

13. The grant of security by the Debtor to NBNYC was perfected by the filing a UCC-1 financing statement on October 5, 2015, and a UCC Correction Statement on October 7, 2015 (the "UCC Filings").   The UCC Filings have not lapsed.  Copies of the UCC Filings are annexed as **Exhibit C.**

14. Also to secure the Debtor's obligations under the Note, on October 2, 2015, the Debtor entered into with NBNYC an Assignment of Leases and Rents (the "Assignment of Rents", together with the Note and Mortgage and Security Agreement, the "Loan Documents") pursuant to which the Debtor assigned to NBNYC its rights in all existing and future leases, rents, claims arising from any rejection of any lease in bankruptcy, lease guaranties, proceeds

from the sale of the foregoing (together with the Property, the "Pre-Petition Collateral").  A copy of the Assignment of Rents is annexed as **Exhibit D.**

15.     The Debtor agrees and acknowledges that NBNYC has properly perfected its first priority liens and security interests in the Pre-Petition Collateral by virtue of the filing and recording of the Mortgages and that its liens in the Pre-Petition Collateral are duly perfected, valid, existing, and legally enforceable.

16.     Further, NBNYC is likely to assert that all cash equivalents, whether in the form of cash, rents, accounts generated therefrom, security deposits, deposit accounts, or in any other form, whenever acquired, which represent income, proceeds, products, rents, or profits of the Pre-Petition Collateral that are now in the possession, custody or control of the Debtor (or persons in privity with the Debtor), or in which the Debtor will obtain an interest during the pendency of the Chapter 11 Case, are and shall be treated as the "cash collateral" in which NBNYC has asserted a security interest for the purposes, and within the meaning, of Bankruptcy Code § 363(a) (collectively, the "Cash Collateral") and NBNYC has first priority perfected liens and security interests in the Cash Collateral pursuant to the Mortgage and Security Agreement and in accordance with Bankruptcy Code §§ 361, 363(a) and 552(b).

**Pre-Petition Secured Debt:**
**Disputed Lien of Loft Space Condominium**

17.     The Debtor is in an ongoing dispute with the Board of Managers of the Loft Space Condominium (the "Board") concerning what the Debtor believes are improper assessments that should have been paid from a reserve/working capital account established by the Debtor's predecessor.  The Debtor also objects to the assessments because a substantial amount relate exclusively to residential units for which the Debtor, as the owner of the Commercial Units, is not responsible pursuant to the recorded Condominium Declaration.

18.      In furtherance of the dispute, the Board recorded in the Office of the Registrar of the City of New York the following Notices under the Condominium Act, which created liens on the Debtor's four commercial condominium units totaling $189,766.01 as follows:

    a.   Commercial Unit # 1:  Filed on June 30, 2016 in the amount of $71,085.41.

    b.   Commercial Unit # 2:  Filed on August 14, 2015 in the amount of $45,368.40.

    c.   Commercial Unit # 3:  Filed on July 11, 2016 in the amount of $37,161.41.

    d.   Commercial Unit # 4:  Filed on August 14, 2015 in the amount of $36,150.79.

(the "Assessment Liens"). Copies of the Assessment Liens are annexed as **Exhibit E.**

19.      On January 7, 2016, the Board commenced an action (the "Lien Foreclosure Action") against the Debtor, *Loft Space Condominium, by its Board of Managers v. LW Retail Associates LLC, et al.*, Supreme Court, New York County, Index No. 150147/2016, seeking a judgement of foreclosure with respect to the foregoing liens.

20.      The Board has not updated its four lien filings totaling $189,766.01.  However, it has alleged in the Lien Foreclosure Action that the Debtor owes more.  In total, the Board seeks to assess upon Debtor **$545,000**, together with an *astounding* demand for legal fees and late fees exceeding **$1,000,000**.

21.      The $545,000 assessment consists of (i) the Debtor's 25% share of a $650,000 assessment to condominium unit holders for sidewalk vault restoration and fire system repairs, which the Debtor contends was not necessary work and also contends that the Board should have had a significant reserve fund from which to pay the expenses; and (ii) the Debtor's 25% share of a $1,500,000 assessment to condominium unit holders for work to the Worth Street and Leonard Street roofs ($412,000 and $580,000 respectively), and façade ($250,000) and two elevators ($250,000), which the Debtor contends was mostly for residential portions of the building and

therefore is not the Debtor's responsibility.

22.    The Debtor contends that it owes *at most* **$225,000** in connection with the two assessments.

### Pre-Petition Secured Debt: Undisputed Real Estate Taxes

23.    Real property taxes became due to New York City Department of Tax and Finance ("NYCDTF") on July 1, 2017.  As the Petition Date, $128,466.85 in real property tax payments remained due and owing from the Debtor to NYCDTF.  Real property taxes are a first priority statutory lien on real property.

### Relief Requested

24.    The Debtor submits this Motion pursuant to Bankruptcy Code §§ 363(c)(2)(B), and 361 and Bankruptcy Rule 4001(b) with respect to the Debtor's request for authority to use property which may constitute cash Collateral in which NBNYC is likely to assert a security interest, substantially in accordance with the terms and conditions set forth in the proposed Order (the "Order") annexed hereto as **Exhibit F.**  The Debtor believes that NBNYC has a perfected security interest in the Debtor's property which may constitute Cash Collateral, and that the Board's Assessment Liens are disputed.

25.    The proposed Order grants the Debtor the authority to use the NBNYC's (undisputed) and the Board's (disputed) cash Collateral pursuant to Bankruptcy Code §§ 363 (c)(1) and (2) and Bankruptcy Rule 4001(b) to the extent necessary to continue the operation of its business and to preserve the value of the estate during the course of the Chapter 11 case.

26.    Section 363(a) of the Bankruptcy Code states as follows:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have

an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title.

27.     Section 363(c) of the Bankruptcy Code provides as follows:

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(c)(2) The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless –

    (A) each entity that has an interest in such cash collateral consents; or
    (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

28.     Section 363(d) of the Bankruptcy Code provides as follows:

(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title.

29.     Accordingly, pursuant to § 363(c)(2) of the Bankruptcy Code the consent of NBNYC and the Board, or authority from this Court, is required to use Collateral in which they have asserted a security interest.

## Adequate Protection – Replacement Liens

30.     The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. In re Swedeland Development Group, Inc., 16 F.3d 552 (3rd Cir. 1994). See also, In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the

value of the creditor's secured claim as of the petition date due to a debtor's continued use of the collateral").

31.    Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987). In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1086); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Beker Industries Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJ Chevrolet, Inc. 190 B.R. 542, 545 (Bankr. E.D.Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case).

32.    The Order provides that, as adequate protection for the Debtor's use of NBNYC's (undisputed) and the Board's (disputed) Collateral, in consideration for the use of the Cash Collateral and for the purpose of adequately protecting them from Collateral Diminution[1], the Debtor shall grant NBNYC and the Board replacement liens in all of the Debtor's pre-petition and post-petition assets and proceeds, including the Cash Collateral and the proceeds of the foregoing, to the extent that NBNYC and the Board had a valid security interest in said pre-petition assets on the Petition Date and in the continuing order of priority that existed as of the Filing Date (the "Replacement Liens").

33.    The Replacement Liens shall be subject and subordinate only to: (a) United States Trustee fees payable under 28 U.S.C. Section 1930 and 31 U.S.C Section 3717; (b) professional fees of duly retained professionals in this Chapter 11 case as may be awarded pursuant to Sections 330 or 331 of the Code or pursuant to any monthly fee order entered in the Debtor's Chapter 11 case; (c) the fees and expenses of a hypothetical Chapter 7 trustee to the extent of

---

[1]    For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditors' interests in Debtor's property as of the Petition Date by reason of Debtor's use of Cash Collateral in accordance with the proposed Order.

$10,000; and (d) the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 ("Avoidance Actions") of the Bankruptcy Code (collectively, the "Carve-Outs").

34.      The Debtor submits that in order to preserve the Debtor's estate and ensure the viability of the Debtor during the Chapter 11 case, NBNYC and the Board should be granted Replacement Liens with the same nature, extent and validity of their pre-petition liens, subject to investigation by the Debtor, any creditors, and any committee appointed in the Debtor's Chapter 11 case.

### Adequate Protection - Payments

35.      The Debtor is a Single Asset Real Estate ("SARE") entity as defined in 11 U.S.C. §101(51B). As such, the provisions of 11 U.S.C. §362(d)(3) affect the Debtor's obligation to make adequate protection payments.

36.      11 U.S.C. §362(d)(3) provides in part as follows:

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

    **(3)** with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (**or such later date as the court may determine for cause by order entered within that 90-day period**) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

        **(A)** the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

        **(B)** the debtor has commenced monthly payments that—

            **(i)** may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim

is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

**(ii)** are in an amount equal to **interest at the then applicable nondefault contract rate of interest** on the value of the creditor's interest in the real estate;

(emphasis provided)

37.     The Debtor's Commercial Units have been appraised at $12,200,000.  Together, the first mortgage, real estate taxes, and the Board's disputed lien total approximately $6,700,000.  Therefore, the Debtor has approximately $5,500,000 in equity in the Commercial Units.  For purposes of 11 U.S.C. §362(d)(1) and (2), such substantial equity in real property satisfies the concern that a secured creditor's financial interests be "adequately protected".

38.     However, the focus of 11 U.S.C. §362(d)(3) appears to be broader.  Even where there is substantial equity in a property, §362(d)(3) directs monthly cash payments to a secured creditor at the "nondefault contract rate of interest".  Typically, the "contract rate" is defined by a mortgage note's interest rate.

39.     <u>NBNYC</u>:  The Debtor proposes to continue making monthly debt service payments to NBNYC in the amount of $28,246.89 per month as provided for in the Note and in accordance with the terms set forth therein as adequate protection to NBNYC and in satisfaction of the Debtor's obligations under 11 U.S.C. §362(d)(3)(B).

40.     <u>NYCDTF</u>:  The Debtor believes there is no "nondefault contract rate of interest" as contemplated by 11 U.S.C. §362(d)(3)(B) with respect to real estate taxes that would require the Debtor to make monthly payments to NYCDTF.  However, the real estate taxes are undisputed and a fixed, liquidated amount.  As such, the Debtor proposes to pay NYSDTF $1,284.66 per month representing a 1% interest rate in satisfaction of the Debtor's obligations under 11 U.S.C. §362(d)(3)(B).

41.     In addition, the Debtor is contemplating a future motion seeking authority to pay NYCDTF the amount of its first priority secured claim from the Debtor's operating profits.

42.     <u>The Board</u>:  There is no "non-default contract rate of interest" that applies to the Board as contemplated by 11 U.S.C. §362(d)(3)(B).  Rather, the Board has a highly disputed, non-consensual lien for alleged condominium assessments that are subject to ongoing active litigation.

43.     11 U.S.C. §362(d)(3) was designed to protect undersecured mortgagees from a debtor making a last-ditch attempt to avoid a foreclosure where there is no equity in the property and no chance of a reorganization.  Congress sought to protect such mortgagees from abuse and further delay where a Debtor has little hope for a re-finance or reorganization.

44.     The situation here is very different.  The Debtor did not file this case in a last-ditch effort to avoid foreclosure on an underwater property.  To the contrary, there is substantial equity in the property protecting the Board's disputed claim, the Debtor is current on its mortgage payments, and the Debtor operates at a profit.  The Board's claim is not the type of claim that 11 U.S.C. §362(d)(3) was designed to protect.

45.     The Board's claim itself is subject to a significant dispute that cannot be determined from a simple review of the Debtor's payment history, as with a mortgage.  While the Debtor contends that at most it owes *at most* $225,000 in connection with the two assessments, the Board contends the Debtor owes $545,000 for the two assessments (a significant portion of which are related to residential units for which the Debtor his not liable), together with an *astounding* demand for legal fees and late fees exceeding $1,000,000.  These amounts are not even reflected in the Board's most recently filed liens, which total only $189,766.01 (See Exhibit E).

46.     The Board's secured claim does not arise from a contract and there is no

"applicable nondefault contract rate of interest" that can be computed for purposes of 11 U.S.C.

§362(d)(3)(B).

47.     As such, the Debtor contends that 11 U.S.C. §362(d)(3) does not require the

Debtor to make monthly payments to the Board for the Board to be adequately protected as

contemplated by the statute.

48.     This Court has the authority to establish the requirements for any monthly

payment pursuant to 11 U.S.C. §362(d)(3).  *In re Crown Ohio Investments, LLC*, 2010 WL

935576 at 3 (Bankr. E.D.N.Y. 2010) (holding, the court "has discretion to determine whether the

debtor complied with §362(d)(3) and to determine the extent of the relief sought").

49.     The Debtor requests that this Court exercise its authority to fashion the Debtor's

compliance 11 U.S.C. §362(d)(3) by finding that:

    a.  The Debtor need not make monthly adequate protection payments to the
Board to be in compliance with 11 U.S.C. §362(d)(3) because there is no
"nondefault contract rate of interest" for the Debtor to pay.  The Board is
already adequately protected for purposes of 11 U.S.C. §362(d) by substantial
equity in the property; and

    b.  For good cause shown, extending the Debtor's time to file a plan of
reorganization as contemplated by 11 U.S.C. §362(d)(3) through the date that
is sixty days after a judicial determination or consensual resolution of the
Debtor's dispute with the Board concerning the assessments.

## **The Budget**

50.     The Debtor proposes to use Collateral only for ordinary and necessary operating

expenses substantially in accordance with the operating budgets annexed hereto as **Exhibit G**

(the "Budget"). The Debtor believes that the Budget includes all reasonable, necessary and

foreseeable expenses to be incurred in the ordinary course of operating the Debtor's business for

the period set forth in the Budget. The Debtor believes that the use of Collateral in accordance

with the Budget will provide the Debtor with adequate liquidity to pay administrative expenses as they become due and payable during the period covered by the Budget.

### Notice

51.     This Motion is being served on notice to National Bank of New York City, New York City Department of Tax and Finance, the Board of Managers of the Loft Space Condominium, the United States Trustee and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d), including but not limited to the Debtor's twenty (20) largest unsecured creditors.

**WHEREFORE**, the Debtor respectfully requests entry of the Order, together with such other and further relief as is just and proper under the circumstances.

Dated:  White Plains, New York
        October 6, 2017                     Respectfully submitted,

                                            DELBELLO DONNELLAN WEINGARTEN
                                            WISE & WIEDERKEHR, LLP
                                            *Proposed Counsel for the Debtor*
                                            One North Lexington Avenue
                                            White Plains, New York 10601
                                            (914) 681-0200

                                            By: */s/ Dawn Kirby*
                                                  Dawn Kirby