UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re                                                      :
                                                           :        Chapter 11
LW RETAIL ASSOCIATES LLC,                                  :
                                                           :        Case No. 17-45189 (ESS)
                                       Debtor.             :
--------------------------------------------------------------X


**MOTION OF LOFT SPACE CONDOMINIUM SEEKING (I) TO DISMISS THE
DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112,
(II) FOR THE COURT TO ABSTAIN FROM AND DISMISS THE DEBTOR'S CHAPTER
11 CASE PURSUANT TO 11 U.S.C. § 305, (III) TO REMAND THREE LITIGATIONS
BACK TO THE STATE COURT AND FOR RELIEF FROM THE AUTOMATIC STAY
TO CONTINUE THOSE LITIGATIONS, OR
(IV) TO LEAVE THE RECEIVER IN PLACE PURSUANT TO 11 U.S.C. §543**


Jonathan L. Flaxer, Esq.
Michael S. Weinstein, Esq.
GOLENBOCK EISEMAN ASSOR
 BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
(212) 907-7300

*Counsel to Loft Space Condominium*

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................ 2

BACKGROUND ............................................................................................................... 3

    I.      The Building and Its Sponsor ................................................................. 3

    II.     The Construction Defect Action ............................................................ 4

    III.    The Debtor Fails to Pay its Common Charges, Including Two
         Assessment to Pay For Repairs ............................................................ 6

    IV.    The Disputed Reserve Action ............................................................... 7

    V.     The Foreclosure Action ........................................................................ 8

    VI.    The Chapter 11 Case ............................................................................ 9

RELIEF REQUESTED .................................................................................................... 11

LEGAL ARGUMENT ..................................................................................................... 12

    I.      THE COURT SHOULD DISMISS THE DEBTOR'S BANKRUPTCY CASE .......... 12

        (A)    THE BANKRUPTCY CASE SHOULD BE DISMISSED UPON
              APPLICATION OF THE *C-TC* FACTORS ......................................... 12

        (B)    APPLICATION OF THE *SLETTELAND* FACTORS ALSO SUPPORTS
              DISMISSAL OF THIS CASE ............................................................ 16

    II.     THE COURT SHOULD DISMISS THIS BANKURPTCY CASE UNDER
         SECTION 305(a) .............................................................................. 20

        (A)    THE MOST IMPORTANT FACTOR FAVORS DISMISSAL ............................ 21

        (B)    THE OTHER RELEVANT FACTORS SUPPORT DISMISSAL UNDER
              SECTION 305 ................................................................................ 23

    III.    IN THE ALTERNATIVE, THE COURT SHOULD ABSTAIN AND REMAND
         THE ACTIONS AND MODIFY THE STAY TO PERMIT THE CONDOMINIUM
         TO CONTINUE THE ACTIONS ........................................................ 23

i

(A)    THE COURT MUST, OR SHOULD, ABSTAIN AND THE ACTIONS
SHOULD BE REMANDED..................................................................................23

(i)  Mandatory Abstention is Appropriate ..............................................24

(ii) Permissive Abstention is Appropriate ..............................................27

(iii) Equitable Remand is Appropriate ...................................................30

(B)    IF THE ACTIONS ARE REMANDED WITHOUT DISMISSAL OF THE
CASE, THE COURT SHOULD MODIFY THE AUTOMATIC STAY TO
PERMIT THE CONDOMINIUM TO PURSUE THE ACTIONS ......................30

IV.    PENDING RESOLUTION OF THE CONDOMINIUM'S MOTION, OR
SHOULD THE MOTION BE DENIED, THE RECIVER SHOULD REMAIN
IN PLACE...................................................................................................................33

NOTICE....................................................................................................................................35

CONCLUSION.........................................................................................................................35

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*,
    931 F.2d 222 (2d Cir. 1991).................................................................................18

*Baker v. Simpson*,
    613 F.3d 346 (2d Cir. 2010)................................................................................26

*Barbaro v. Wider (In re Wider)*,
    No. 09-72993 (AST), 2009 WL 4345411 (Bankr. E.D.N.Y. Nov. 30, 2009) ........................28

*C-TC 9th Ave. P'Ship v. Norton Co. (In re C-TC 9th Ave. P'Ship)*,
    113 F.3d 1304 (2d Cir. 1997)....................................................................... *passim*

*Carolin Corp. v. Miller*,
    886 F.2d 693 (4th Cir. 1989) ..............................................................................18

*Clear Blue Water, LLC v. Oyster Bay Mgmt. Co.*,
    476 B.R. 60 (E.D.N.Y. 2012) .............................................................................15

*Dill v. Dime Sav. Bank (In re Dill)*,
    163 B.R. 221 (E.D.N.Y. 1994) ....................................................................... 33-34

*Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.)*,
    119 B.R. 14 (E.D.N.Y. 1990) .............................................................................12

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*,
    496 B.R. 706 (S.D.N.Y. 2013)............................................................................24

*In re 698 Flushing Realty Corp.*,
    335 B.R. 17 (Bankr. E.D.N.Y. 2005)....................................................................16

*In re Accident Claims Determination Corp.*,
    146 B.R. 64 (Bankr. E.D.N.Y. 1992)....................................................................22

*In re Ames Dep't Stores, Inc.*,
    Case No. 01-42217, 2006 WL 1288586 (Bankr. S.D.N.Y. Apr. 19, 2006)............................26

*In re Anton*,
    145 B.R. 767 (Bankr. E.D.N.Y. 1992)..................................................................32

*In re AOG Entm't, Inc.*,
    569 B.R. 563 (Bankr. S.D.N.Y. 2017)...................................................................26

*In re Balco Equities Ltd., Inc.*,
 312 B.R. 734 (Bankr. S.D.N.Y. 2004) ..................................................................31

*In re Byrd*,
 172 B.R. 970 (Bankr. W.D. Wash. 1994) ............................................................18

*In re CCN Realty Corp.*,
 19 B.R. 526 (Bankr. S.D.N.Y. 1982) ...................................................................34

*In re Dreier*,
 438 B.R. 449 (Bankr. S.D.N.Y. 2010) .................................................................27

*In re Duratech Indus., Inc.*,
 241 B.R. 291 (Bankr. E.D.N.Y. 1999) .................................................................22

*In re ELRS Loss Mitigation, LLC*,
 325 B.R. 604 (Bankr. N.D. Okla. 2005) ..............................................................22

*In re Exeter Holding, Ltd.*, Case No. 11-77954 (AST),
 2013 WL 1084548 (Bankr. E.D.N.Y. Mar. 14, 2013) .........................................30

*In re Fairfield Sentry Ltd. Litigation*,
 458 B.R. 665 (S.D.N.Y. 2011)..............................................................................25

*In re Fierro*, Case Nos. 14-41439 (NHL) & 14-41440 (NHL)
 2015 WL 3465753 (Bankr. E.D.N.Y. May 29, 2015) ..........................................29

*In re Globo Comunicacoes e Participacoes S.A.*,
 317 B.R. 235 (S.D.N.Y. 2004)..............................................................................20

*In re Hartford & York LLC*,
 No. 13-45563 (ESS), 2014 WL 985449 (Bankr. E.D.N.Y. Mar. 13, 2014) ..................... 13-15

*In re Int'l Tobacco Partners, Ltd.*,
 462 B.R. 378 (Bankr. E.D.N.Y. 2011)............................................................24, 28

*In re Keene Corp.*,
 171 B.R. 180 (S.D.N.Y. 1994)..............................................................................32

*In re Midgard Corp.*,
 204 B.R. 764 (B.A.P. 10th Cir. 1997)...................................................................26

*In re Mountain Dairies, Inc.*,
 372 B.R. 623 (Bankr. S.D.N.Y. 2007) .................................................................22

*In re New 118th LLC*,
 396 B.R. 885 (Bankr. S.D.N.Y. 2008) .................................................................24

*In re Parsons*,
    No. 11-30071, 2012 WL 1357183 (Bankr. S. Dak. Apr. 18, 2012)........................................22

*In re Persico Contracting & Trucking, Inc.*,
    No. 10-22736 (RDD), 2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010)........................21

*In re Plagakis*,
    No. 03-0728(SJ), 2004 WL 203090 (E.D.N.Y. Jan. 27, 2004)...............................................15

*In re Portrait Corp. of Am., Inc.*,
    406 B.R. 637 (Bankr. S.D.N.Y. 2009) ...................................................................................28

*In re Selectron Mgmt. Corp.*,
    No. 10-75320 (DTE), 2010 WL 3811863 (Bankr. E.D.N.Y. Sept. 27, 2010) .................. 21-22

*In re Sletteland*,
    260 B.R. 657 (Bankr. S.D.N.Y. 2001) ............................................................................ 17-18

*In re Taub*,
    438 B.R. 39 (Bankr. E.D.N.Y. 2010)....................................................................................32

*In re The Bridge to Life, Inc.*,
    330 B.R. 351 (Bankr. E.D.N.Y. 2005)...................................................................... 16, 18-19

*In re Tornheim*,
    181 B.R. 161 (Bankr. S.D.N.Y. 1995) ...................................................................................30

*In re TPG Troy, LLC*,
    492 B.R. 150 (Bankr. S.D.N.Y. 2013) ...................................................................................21

*In re Wally Findlay Galleries (New York), Inc.*,
    36 B.R. 849 (Bankr. S.D.N.Y. 1984) ...............................................................................16, 19

*In re Wood*,
    825 F.2d 90 (5th Cir. 1987) ...................................................................................................26

*In re Zeoli*,
    249 B.R. 61 (Bankr. S.D.N.Y. 2000) ....................................................................................31

*Lead I JV, LP v. North Fork Bank*,
    401 B.R. 571 (E.D.N.Y. 2009) ..............................................................................................24

*Little Rest Twelve, Inc. v. Visan*,
    458 B.R. 44 (S.D.N.Y. 2011)..................................................................................................30

*McMillan v. Barclays Bank PLC*,
    No. 13-cv-01095, 2014 WL 4364053 (S.D.N.Y. Sept. 3, 2014) ............................................26

*Montague Pipeline Techs. Corp. v. Grace/Lansing (In re Montague Pipeline Techs. Corp.)*, 209 B.R. 295 (Bankr. E.D.N.Y. 1997).............................................................31

*NLRB v. Bildisco & Bildisco*,
465 U.S. 513 (1984).................................................................................................16

*Osuji v. Federal Nat'l Mortgage Assoc.*,
571 B.R. 518 (E.D.N.Y. 2017) ...............................................................................28

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990)............................................................................. 31-32

*Union v. Wolas*,
502 U.S. 151 (1991).................................................................................................16

*Winstar Holdings, LLC v. Blackstone Group L.P.*,
No. 07-cv-4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ............................26

*Young v. U.S.*,
535 U.S. 43 (2002)...................................................................................................15

**Statutes**

11 U.S.C. § 305.................................................................................................... 20- 23

11 U.S.C. § 362.................................................................................................... 30-31

11 U.S.C. § 543.................................................................................................... 33-35

11 U.S.C. § 1112.................................................................................................. 11-12

28 U.S.C. § 1334..........................................................................................24-25, 27, 29

28 U.S.C. §1452...........................................................................................23, 25, 30


**Other Authorities**

1 Collier on Bankruptcy (16th Ed. 2015)...................................................................28

Jonathan L. Flaxer, Esq.                     **Hearing Date:  November 21, 2017 at 10:00 a.m.**
Michael S. Weinstein, Esq.                   **Objection Deadline:  November 14, 2017 at 5:00 p.m.**
GOLENBOCK EISEMAN ASSOR BELL
  & PESKOE LLP
711 Third Avenue
New York, New York 10017
(212) 907-7300

*Counsel to Loft Space Condominium*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re                                             :
                                                  :        Chapter 11
LW RETAIL ASSOCIATES LLC,                         :
                                                  :        Case No. 17-45189 (ESS)
                          Debtor.                 :
---------------------------------------------------------------X

**MOTION OF LOFT SPACE CONDOMINIUM SEEKING (I) TO DISMISS THE
DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112,
(II) FOR THE COURT TO ABSTAIN FROM AND DISMISS THE DEBTOR'S
CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 305, (III) TO REMAND THREE
LITIGATIONS BACK TO THE STATE COURT AND FOR RELIEF FROM THE
AUTOMATIC STAY TO CONTINUE THOSE LITIGATIONS, OR
 (IV) TO LEAVE THE RECEIVER IN PLACE PURSUANT TO 11 U.S.C. §543**


**TO THE HONORABLE ELISABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:**

      Loft Space Condominium (the "**Condominium**"), by its Board of Managers (the

"**Board**"), and by and through its undersigned counsel, Golenbock Eiseman Assor Bell & Peskoe

LLP, files this (the "**Motion**")[1] seeking an order (i) dismissing this bankruptcy case pursuant to

section 1112(b) of chapter 11, title 11, United States Code (the "**Bankruptcy Code**");  or in the

alternative, (ii) abstaining from and dismissing this bankruptcy case pursuant to section 305 of

the Bankruptcy Code; or in the alternative, (iii) pursuant to 28 U.S.C. 1334 and 28 U.S.C.

---
[1] In support of the Motion, the Condominium relies on the accompanying declaration of Michele Schlossberg,
annexed hereto as **Exhibit A** (the "**Schlossberg Decl.**") and the declaration of David Richter, annexed hereto as
**Exhibit B** (the "**Richter Decl.**").

§1452(b), abstaining from and/or remanding three litigations between the above-captioned debtor (the "**Debtor**") and the Condominium to the New York state court, and, pursuant to section 362(d) of the Bankruptcy Code, granting relief from the automatic stay to complete those litigations; or in the alternative, (iv) pursuant to section 543(d) of the Bankruptcy Code, authorizing the state court receiver to collect rent on behalf of the Debtor.  In support of the Motion, the Condominium respectfully submits as follows:

## PRELIMINARY STATEMENT

1.      The facts and applicable law as summarized below demonstrate the Debtor's bad faith in filing this case.  The Debtor owns a financially healthy, profitable asset but has refused to pay amounts duly owed to the Condominium.  This bankruptcy case is just the next litigation step in the Debtor's and its predecessor's five year campaign to avoid their obligations to the Condominium.

2.      The Debtor has no desire to "reorganize" its debts.  Indeed, none of the policies of chapter 11 are implicated – there is no financial distress, no need for a reorganization, and nothing to "reorganize".  Rather, the stated purpose of the case is for the Debtor to (i) avoid the effect of a receiver appointed by order of the New York State Supreme Court, New York County (the "**State Court**") without having to seek a stay from the Appellate Division and (ii) change the forum of its two-party dispute with the Condominium from the State Court to this Court. This bad faith filing exacerbates the substantial harm that this Debtor and its predecessor have caused to the Condominium and its twenty-nine residential owners by depriving it of the funds crucially necessary to fund needed repairs to the buildings.  Dismissal of this case will cause no prejudice to the Debtor in that it will restore this dispute to the State Court where all of the Debtor's rights and remedies in that court and under state law will be preserved.  Continuation of this case, however, will substantially prejudice the Condominium in that its financial distress will

worsen while the Debtor enjoys the benefit of the automatic stay in this Court and avoids the need to seek a stay pending appeal and the concomitant need to post a bond.  It is respectfully submitted that this Court, as a court of equity can and should take this into account in its consideration of this Motion.  The Court should dismiss this bankruptcy case as a bad faith filing to allow the Actions to be completed in State Court.  Alternatively, it would be in the best interests of the Debtor and its creditors for the Court to abstain from and dismiss this bankruptcy case pursuant to section 305 of the Bankruptcy Code.

3.      If the bankruptcy case is not dismissed, there is no reason for this Court to substitute itself for the State Court in the Actions, and thus should abstain from and remand the Actions to the State Court.  Further, the Court should grant the Condominium relief from the automatic stay to complete those actions in the State Court.  The Actions solely concern state law claims and have been litigated for years prior to the filing of this bankruptcy case.   The State Court is intimately familiar with the details of each Action, and the Debtor should not be permitted to forum shop after receiving an adverse decision – the order appointing a receiver. These Actions must be completed before any action can take place in this Court, and the State Court is the most efficient forum to reach a prompt resolution.  In addition, if the case is not dismissed, the receiver appointed by the State Court should remain in place to collect rent pending a final resolution of the Actions.

## **BACKGROUND**

### *I.      The Building and Its Sponsor*

4.      The Condominium consists of two buildings located at 78 and 80-82 Leonard Street and 79-81 Worth Street, New York, New York, which collectively have twenty-nine residential units and four commercial units.  SDS Leonard, LLC ("**SDS Leonard**"), which is managed by Louis Greco Jr., was the sponsor for the Condominium.  SDS Leonard originally

controlled the Board and acted as the property manager. SDS Leonard and Mr. Greco controlled the Board until 2010, when purchasers of the residential units obtained control of the Board. SDS Leonard was the property manager until mid-2012, when the Board installed a new property management company unaffiliated with SDS Leonard or Mr. Greco.

5.     In July 2013, SDS Leonard transferred the four commercial units (the "**Units**") to the Debtor for apparently little to no consideration. The Debtor is managed by Mr. Greco. At all times relevant, it has had a seat on the Board. *See* Article III, Section 1(c) of By-Laws (Commercial Unit Owner's Right to Elect Members of the Board of Managers). [2]

6.     Under the Condominium's By-Laws, each unit owner is liable for common charges and assessments, as determined by the Board. The Debtor, as the owner of the Units, is responsible for 25.35% of the total common charges of the Condominium and any assessments. *See* Declaration, Schedule C (definition of Common Charges, Assessments and Special Assessments) annexed as **Exhibit 1** to Schlossberg Declaration.

7.     In addition to common charges and assessments, pursuant to Article VI, Section 17 of the By-Laws, the commercial Units must pay for their water consumption and sewer usage. Further, in accordance with the Condominium's late fee policy and Article VI, Section 6 of the By-Laws, unit owners are also liable to the Condominium for a monthly late fee, which is equal to 5% of such unit owner's unpaid balance. Moreover, Article VI, Section 6 permits the Condominium to recover attorneys' fees incurred by the Board to collect unpaid common charges or assessments.

## II.     The Construction Defect Action

8.     In 2012, the Board, on behalf of the Condominium, commenced an action against SDS Leonard, its principals and affiliates, and its project engineer in the State Court asserting,

---

[2] A copy of the By-Laws is annexed as **Exhibit 1** to the Schlossberg Declaration.

among other things, that defendants breached, and made misrepresentations in, the Condominium's offering plan and other materials concerning the design and construction of the Condominium's buildings and units (the "**Construction Defect Action**").

9.    The Condominium is currently pursuing the following claims in the Construction Defect Action:  (1) breach of contract claims based on (a) conditions that are or were hazardous, dangerous, and/or in violation of the law and (b) SDS Leonard's failure to obtain a permanent certificate of occupancy[3], and (2) claims that SDS Leonard fraudulently conveyed the Units to the Debtor.

10.    During the course of the litigation, SDS Leonard amended the Condominium's offering plan and declared the Debtor to be the successor sponsor.   Accordingly, in October 2016, the Condominium amended its complaint to include claims against the Debtor that, *inter alia*, the Condominium had been compelled to perform a number of very costly repairs and replacements to address numerous hazardous and/or dangerous conditions at the Condominium that the Debtor refused to remedy, and that the Condominium would be compelled to make additional costly repairs or replacements in the future to address several other defects.  Richter Decl., ¶5.  Discovery in the Construction Defect Action was near completion at the time of the Debtor's chapter 11 filing.  All that remained were three depositions and limited post-deposition document discovery.

11.    During the course of the Construction Defect Action, the Board learned that SDS Leonard and Mr. Greco had known about the façade damage for years.  Prior to becoming the Condominium, the buildings were residential rental properties owned by Leonard Street

---

[3] SDS Leonard and the Debtor's failure to obtain a certificate of occupancy for nearly three years has placed considerable stress on the Condominium's unit owners.   Lenders have refused to provide financing because there is no certificate of occupancy for the buildings.   Unit owners have therefore had great difficulty selling and refinancing their units.

Associates LLC ("**Leonard Street LLC**"), another entity managed by Mr. Greco.  In or about 2006, the Leonard Street building suffered damage caused by excavation operations on an adjacent lot.   Mr. Greco filed an insurance claim.  Based on an engineer's report requested by the Leonard Street LLC's insurer, the building suffered significant interior damage and damage to its façade, and the engineer estimated that it would cost approximately $362,115 to repair the damage caused by the excavation operations.   In April 2009, Leonard Street LLC's insurance company paid Leonard Street LLC the amount of $434,538 to repair the damage.

12.    At the time of the insurance payment, Leonard Street LLC had already transferred ownership of the property to SDS Leonard, who had filed its condominium offering plan.  In June 2009, SDS Leonard filed an amendment to the offering plan stating that the building façade suffered "minor damage" that SDS Leonard would correct in the second quarter of 2009. According to the Cost Affidavit filed with the New York City Department of Buildings in July 2009, the Sponsor spent only $30,000 to repair the façade, well less than the amount paid by the insurance company for the façade damage.

### III.    The Debtor Fails to Pay its Common Charges, Including Two Assessments to Pay for Repairs

13.    During the Construction Defect Action, the Board determined that it could not wait for a recovery in that action to begin repairing the hazardous and dangerous conditions left behind by SDS Leonard, which the Debtor assumed as the successor sponsor of the Condominium.

14.    In or about August 2014, the Board issued a $650,000 assessment to cover the cost to repair (1) a sidewalk vault, which had a deteriorating structural beam, was suffering from leaks and was a threat to the safety of the Condominium's residents and pedestrians using the sidewalk, and (2) the defective fire prevention systems.  Richter Decl., ¶5.

15.     In or about April 2016, the Board imposed a second assessment in the amount of $1.5 million to pay for needed structural repairs to the roofs, façades, and elevators. Richter Decl., ¶5.

16.     Most if not all of these repairs were necessary because the Debtor and/or SDS Leonard caused and failed to address these safety issues while it controlled the Condominium and its finances. The Debtor has exacerbated the problem by refusing to pay its 25.35% share of the assessments despite having never objected to the assessments as a member of the Board. Richter Decl., ¶6. This is consistent with the Debtor's payment history, in which the Debtor frequently defaulted in payment of its base common charges and water and sewage fees, and cavalierly paid amounts it arbitrarily decided to pay, regardless of the financial strain it causes to the Condominium and its non-Debtor unit owners.   Schlossberg Decl., ¶8.

17.     As a result of the Debtor's failure to pay its share of the assessments, the Condominium currently lacks sufficient resources to pay its contractors to complete work related to the second assessment. Richter Decl., ¶7. Furthermore, the Condominium no longer has any cushion in its capital account and thus would not have the ability to pay for any additional emergency repairs should they arise. Richter Decl., ¶7.

## IV.     The Disputed Reserve Action

18.     Instead of paying the assessments, in 2015, the Debtor commenced litigation in the State Court against the Board and the Condominium alleging that it improperly misappropriated a $623,000 capital reserve fund established by SDS Leonard that could have funded the repairs (the "**Disputed Reserve Action**").

19.     Discovery to date has revealed that (1) SDS Leonard itself spent down a significant portion of the reserve fund when it controlled the Board and/or when a management company affiliated or controlled by SDS Leonard managed the Condominium; and (2) that,

subsequent to SDS Leonard's relinquishment of control of the Board to the Condominium's residential unit owners and transfer of management of the Condominium to a non-sponsor-controlled management company, the Board's use of the remaining monies in the reserve fund was in accordance with the intended purposes under the offering plan, *i.e.*, to fund capital repairs and improvements or for replacement items in the Common Elements, which are the responsibility of the Board, and to pay other proper expenses as determined by the Board.

20.     Trial in the Disputed Reserve Action is scheduled for November 29, 2017.   Party document discovery is complete.   The Debtor's deposition remains outstanding because it has inexplicably failed to identify a witness with knowledge.  It was (and remains) the Board's intention to move for summary judgment immediately following receipt of some limited non-party paper discovery consisting of bank statements and cancelled checks that should have been, but were not, produced by the Debtor.

## V.     The Foreclosure Action

21.     Due to the Debtor's failure to pay, *inter alia*, common charges, water and sewer charges and assessments, the Condominium filed four Notices of Liens under the Condominium Act, one for each of the Units (collectively, the "**Liens**").

22.     As of the date hereof, the Condominium's claim secured by the Liens, which are continuing liens under state law, is in an amount not less than $1,845,787.36, which includes: (i) $11,881.02 in unpaid base common charges; (ii) $9,047.85 in unpaid water and sewage charges; (iii) $545,128.86 for the assessments; (iv) $22,755.10 for repairs to fix a gas leak in the Units; (v) reimbursement of a $35 bank charge; (vi) $1,159,592.07 in late fees that have accrued over the three years that the Debtor has defaulted in payment of common charges, water and sewer charges, and assessments; and (vii) $97,347.46 for reimbursement of legal fees incurred by the Condominium.  Schlossberg Decl., ¶8.

23.     On January 7, 2016, the Condominium filed a complaint in the State Court to foreclose on each of the Liens (the "**Foreclosure Action**," and together with the Construction Defect Action and Reserve Action, the "**Actions**").  On August 26, 2016, on notice to the Debtor and the senior secured creditor, the Condominium filed a motion to appoint a temporary receiver to collect rent from the Debtor's tenants to apply to the future and past due common charges (including assessments, attorneys' fees, and late fees).

24.     After several hearings and more than a year of motion practice, by Order dated September 20, 2017, the State Court authorized the appointment of a receiver (the "**Receiver Order**").  A copy of such Order is annexed hereto as **Exhibit C**.  The Receiver Order provides that the Condominium "is entitled after any [] default, to file a lien for such unpaid common charges, and, upon commencing a proceeding to foreclose said lien, [the Condominium] is statutorily and contractually entitled to the appointment of a receiver of the rents and profits of [the Units]."  Pursuant to the Receiver Order, the Receiver is "authorized and directed to demand, collect and receive from any tenant(s) of said Commercial Units, or other persons liable therefore, all rents now due and unpaid or hereinafter to become due."

25.     The Debtor has filed a notice of appeal from the Receiver Order with the Appellate Division, First Department, but, as of the Petition Date, had not sought a stay pending appeal.

## VI.     The Chapter 11 Case

### (A)     Commencement of the Case

26.     To avoid having to seek a discretionary stay pending appeal and post a bond, on October 5, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  As set forth in the Declaration of Louis Greco Pursuant to Local Bankruptcy Rule 1007-4 [Dkt. No. 3] (the "**Greco Decl.**"), this bankruptcy case was filed in

response to the Receiver Order.  Greco Decl., ¶13.  Moreover, according to Mr. Greco, the

Debtor seeks to "resolv[e] its dispute with the Board through litigation before the Bankruptcy

Court."  Greco Decl., ¶15.  The Debtor has filed notices to remove each of the Actions to this

Court.

### (B)    The Debtor Has Few Unsecured Creditors

27.    On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities (the

"**Schedules**") and Statement of Financial Affairs ("**SOFA**").  In the Schedules, the Debtor values

the Units in excess of $12 million.  This exceeds the Debtor's secured claims, which are held by

the Condominium, National Bank of NYC, and the New York City Department of Finance, by

approximately $5 million.[4]

28.    The Schedules identify only five unsecured creditors that are collectively owed

$28,913.36, and the Debtor disputes the largest unsecured claim in the amount of $19,313.36

(*i.e.*, 67% of the total unsecured claims).  Thus, the undisputed general unsecured creditors

amount to less than $10,000.

### (C)    The Debtor is Not in Financial Distress

29.    The budget annexed to the Cash Collateral Motion as Exhibit G (the "**Budget**")

shows that the Debtor is comfortably cash flow positive.  The Debtor collects approximately

$84,000 in rent, whereas its monthly expenses are generally approximately $37,700.  Such

regular monthly expenses include base common charges (exclusive of water and sewer or any

other charges), the mortgage, and insurance.   Since, the Budget does not propose to pay any

amounts to employees of the Debtor, and the Greco Decl., ¶31-32 estimates $0 for payroll to

employees over next 30 days, it appears that the Debtor has no employees.

---

[4] The Condominium takes no position at this time as to the value of the Units.

30.     According to the Budget, even after paying bi-annual real estate taxes in December, the Debtor will still be cash-flow positive for the 3-month period by $64,000. The monthly rent paid by the tenants in the Units substantially exceeds the Debtor's expenses.

31.     Despite this profitability, the Schedules reflect that the Debtor had only $1,163.34 in cash on hand as of the Petition Date. The SOFA explains that in the year prior to the Petition Date the Debtor transferred at least $626,674 to affiliates and insiders of the Debtor (SDS Leonard, Construction Labor Services, and LW Retail Condo), of which $303,649.11 was transferred in the ninety days prior to the Petition Date. *See* SOFA, Questions 3 and 4.

32.     The SOFA also identifies that, in or about September 1, 2017, the Debtor transferred the amount of $716,881.85 to insiders "in connection with the transfer of membership interest of the debtor." *See* SOFA, Question 13. Thus, in total, it appears that the Debtor has transferred more than $1 million to insiders during the last year. It accordingly appears that the Debtor promptly transfers all excess cash to insiders.[5]

### RELIEF REQUESTED

33.     By this Motion, the Condominium seeks entry of an order (i) dismissing the Debtor's chapter 11 case, pursuant to section 1112(b) of the Bankruptcy Code; or in the alternative, (ii) for the Court to abstain from and dismiss the Debtor's chapter 11 case, pursuant to section 305 of the Bankruptcy Code; or in the alternative, (iii) pursuant to section 362 of the Bankruptcy Code, for relief from the automatic stay to continue the Actions, or in the alternative, (iv) pursuant to section 543(d) of the Bankruptcy Code, to permit the receiver to act in such capacity during the pendency of this bankruptcy case.

---

[5] The Debtor's share of the two assessments is $545,128.86, which is far less than the amount reflected on the SOFA as having been transferred by the Debtor to its insiders.

## LEGAL ARGUMENT

### I.    THE COURT SHOULD DISMISS THE DEBTOR'S BANKRUPTCY CASE.

34.    Section 1112(b)(1) provides in pertinent part:

> [A]fter notice and a hearing, . . . the court shall convert a case
> under this chapter to a case under chapter 7 or dismiss a case under
> this chapter, whichever is in the best interests of creditors and the
> estate, if the movant establishes cause.

35.    Section 1112(b)(4) lists sixteen non-exclusive examples of "cause."  In addition to the factors listed in section 1112(b)(4), courts have found cause when a petition is filed in bad faith because a bad faith filing is an abuse of the judicial process or of the jurisdiction of the bankruptcy court.  *See C-TC 9th Ave. P'Ship v. Norton Co. (In re C-TC 9th Ave. P'Ship),* 113 F.3d 1304, 1309-10 (2d Cir. 1997).  *See also Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.),* 119 B.R. 14, 18 (E.D.N.Y. 1990) (good faith is "merged into the power of the court to protect its jurisdictional integrity from schemes of improper petitioners seeking to circumvent jurisdictional purposes absent any economic reality.") (citation omitted).

### (A)    THE BANKRUPTCY CASE SHOULD BE DISMISSED UPON APPLICATION OF THE *C-TC* FACTORS

36.    In *C-TC 9th Ave. P'Ship*, the Second Circuit provided eight factors that are indicative of bad faith.   These factors are: "(1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate

taxes;  and (8) the debtor has no employees."  *In re C-TC 9th Ave. P'Ship*, 113 F.3d at 1311.

37.    These factors are non-exhaustive indicators of bad faith that "guide courts in considering the question of whether a bankruptcy case has been filed in good faith, and assist courts in assessing the totality of the circumstances."  *See In re Hartford & York LLC*, No. 13-45563 (ESS), 2014 WL 985449, at *4 (Bankr. E.D.N.Y. Mar. 13, 2014).

38.    As demonstrated below, application of the *C-TC* Factors overwhelmingly supports dismissal of the Debtor's bankruptcy case as a bad faith filing.

### (i)    The Debtor Has Only One Asset (First *C-TC* Factor)

39.    The Debtor filed this case as a single asset real estate case, consisting of the Units. The Debtor thus concedes that it only has one asset – the Units.  This factor thus supports dismissal.

### (ii)    The Debtor's Few Unsecured Creditors are Small in Relation to the Secured Creditors (Second *C-TC* Factor)

40.    As set forth in the Schedules, the Debtor has at least $7 million in secured debt owed to three secured creditors, including the Condominium.  On the other hand, the Schedules identify only five unsecured claims (one of which is disputed) in the total amount of $28,319.33. Without the disputed claim, the general unsecured creditors' claims amount to less than $10,000. The fact that the secured claims dwarf the amount of the unsecured claims supports that this case was not filed in good faith.  *See, e.g., In re Hartford & York LLC*, 2014 WL 985449, at *4-5 (court held that second *C-TC* factor showed lack of good faith when debtor had $8,823 in unsecured claims and $1,503,387 in secured claims).  This factor thus supports dismissal.

### (iii)    The Debtor's Sole Asset is Subject to the Foreclosure Action (Third *C-TC* Factor)

41.    As set forth above, the Debtor's sole asset – the Units – is subject to the Foreclosure Action as a result of the Debtor's failure to pay common charges and assessments.

This factor thus supports dismissal.

### (iv) The Debtor's Financial Situation is a Two-Party Dispute Which Can be Resolved in the Foreclosure Action (Fourth *C-TC* Factor)

42.     This factor focuses on whether "the Debtor's financial situation is, in essence, a two-party dispute between the Debtor and secured creditors which can be resolved in a pending foreclosure action." *In re Hartford & York LLC*, 2014 WL 985449, at *5. This bankruptcy case is entirely about a two-party dispute – which is the subject of longstanding litigation between the Debtor and SDS Leonard, on the one hand, and the Condominium, on the other hand, pending before the State Court. Here, the Debtor's particular financial situation arises from the finding by the State Court that the Condominium is entitled to the appointment of the receiver. Ultimately, the State Court will resolve the dispute between the two parties regarding the assessments. Thus, the financial dispute will be resolved in the context of a two-party dispute. This factor thus supports dismissal.

### (v) The Timing of this Bankruptcy Case Evidences the Debtor's Intent to Frustrate the Condominium's Rights as a Secured Creditor (Fifth *C-TC* Factor)

43.     The Debtor strenuously opposed the Receiver Order and argued, *inter alia*, that the receiver should be required to pay its operating expenses first. The State Court disagreed. The timing of the filing was clearly designed to frustrate the receiver's ability to undertake his duties and begin collecting rent. After litigating for years before the State Court, the Debtor now seeks to avoid the effectiveness of the Receiver Order by filing this chapter 11 case instead of pursuing its appeal and obtaining a stay. In the Greco Declaration, the Debtor concedes as much. Greco Decl., ¶13. This factor thus supports dismissal.

### (vi) The Debtor Has No Employees (Eighth *C-TC* Factor)

44.     The Debtor has no real business – there are no employees or business operations.

14

*See* ¶29 *supra*. Rather, the Debtor consists of a single asset that generates money to pay debt service, common charges, real estate taxes and insurance.  The Debtor is "run" by a manager (Louis Greco), who also manages SDS Leonard and several of the other insider entities.  This factor thus supports dismissal.

> **(vii)    Consideration of the Totality of the Circumstances Support Dismissal Based Upon Bad Faith**

45.     Consideration of the totality of the circumstances is part of the analysis of bad faith.  *See In re Hartford & York LLC*, 2014 WL 985449, at *4; *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co.*, 476 B.R. 60, 68 (E.D.N.Y. 2012); *In re Plagakis*, No. 03-0728 (SJ), 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004).  In this respect, as noted above, the Debtor and its predecessor failed to address or disclose defects in the condition of the buildings, and have otherwise harmed the Condominium as outlined above.  Then, as owner of the Units, the Debtor refused to pay its share of the assessments in accordance with the By-Laws even though, as a Board member, it never contested the need to complete the repairs or the propriety of the assessments.   As a result of the Debtor's conduct, the Condominium is in a tenuous financial position – it currently lacks sufficient resources to pay its contractors to complete work related to the second assessment or pay for any emergency repairs should they arise.

46.     The Debtor has compounded the foregoing by causing prolonged and expensive litigation, which has exacerbated the crisis now facing the Condominium.  All the while, the Debtor transferred amounts to insiders well in excess of its share of the assessments.   It would violate principles of equity to permit the Debtor to exploit the bankruptcy system to further harm the Condominium.  *See Young v. U.S.*, 535 U.S. 43, 50 (2002) ("bankruptcy courts…are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'") (citation omitted).

47.     In considering the totality of the circumstances, the Condominium also notes that

the Debtor has not filed this case to fulfill any bankruptcy purpose to reorganize or seek

equitable distribution of its assets. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) ("the

fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an

attendant loss of jobs and possible misuse of economic resources") and *Union v. Wolas*, 502 U.S.

151 (1991) (a "prime bankruptcy policy [is] of equality of distribution among creditors of the

debtor."). The case was rather filed as a litigation tactic. Thus, it is respectfully submitted that

the totality of the circumstances, including application of the *C-TC* factors and equitable

considerations, supports dismissal.

**(B)    APPLICATION OF THE *SLETTELAND* FACTORS ALSO SUPPORTS DISMISSAL OF THIS CASE**

48.    In addition to the *C-TC* factors, courts have found that "[a] Chapter 11 filing may

not be used as a litigation tactic to avoid posting a supersedeas bond…Nor may a Chapter 11

filing be employed to obtain an upper hand or leverage in litigation with another party or to

provide an alternate forum for such litigation." *In re The Bridge to Life, Inc.*, 330 B.R. 351, 356-

57 (Bankr. E.D.N.Y. 2005). *See also See In re C-TC 9th Ave. P'Ship*, 113 F.3d at 1310 (citation

omitted) ("An entity may not file a petition for reorganization which is solely designed to attack

a judgment collaterally–the debtor must have some intention of reorganizing."). Thus, a

bankruptcy case is filed in bad faith where "the debtor filed its petition…to avoid the

consequences of adverse state court decisions while it continues litigating," and that "the debtor

is unable to propose a meaningful plan of reorganization until its litigation…is resolved." *See In*

*re 698 Flushing Realty Corp.*, 335 B.R. 17, 20 (Bankr. E.D.N.Y. 2005) (quoting *In re Wally*

*Findlay Galleries (New York), Inc.*, 36 B.R. 849, 850 (Bankr. S.D.N.Y. 1984))

49.    Here, the Debtor's admitted purpose for invoking this Court's jurisdiction is to

obtain a stay of the Receiver Order and to take the Actions away from the State Court and litigate

them before this Court instead.  Greco Decl., ¶13-15.  *In re Sletteland*, 260 B.R. 657 (Bankr. S.D.N.Y. 2001) is particularly instructive in this respect.  In that case, the Court considered the following factors "bearing on the debtor's good faith and as important in deciding a motion to dismiss a Chapter 11 filing in the face of a judgment that the debtor seeks to appeal."

     (1)     whether the debtor can post a bond and/or pay the judgment;

     (2)     whether the debtor has transferred assets or placed assets beyond the reach of creditors;

     (3)     whether the bankruptcy case is actually a two-party dispute between the debtor and the judgment creditor;

     (4)     whether the debtor has exhausted its state remedies in attempting to appeal without posting a bond;

     (5)     whether the debtor is forcing the judgment creditor to fund the appeal against itself because the expenses to litigate the appeal will be paid as an administrative expense; and

     (6)     whether the bankruptcy case is for the purpose of relitigating the State court judgment.

*In re Sletteland,* 260 B.R. 657, 663-666 (Bankr. S.D.N.Y. 2001).  Each factor can provide an independent basis for dismissal for bad faith.  *See Id.* at 663-666.

50.     These factors are instructive in evaluating the totality of circumstances comprising "bad faith".  As set forth herein, based on the totality of the circumstances and application of the *Sletteland* factors, this case was filed in bad faith and should be dismissed.[6]

     **(i)     The Bankruptcy Case is a Two-Party Dispute (Third *Sletteland* Factor)**

51.     As discussed above in paragraph 45, this bankruptcy case is entirely about the long-running dispute between the Condominium and the Debtor over non-payment of common charges, assessments and related charges.  The Schedules support that this is a two-party dispute.

---

[6] Since any one of the *Sletteland* factors can provide an independent basis for dismissal, the Condominium has not relied on factors 1 or 5, which the Condominium submits are neutral to the analysis.

The Debtor has few, if any, unsecured creditors.  Further, no default exists with respect to the other secured creditors.  In fact, National Bank of NYC, although a party to the Foreclosure Action and on notice of all the proceedings, including the Condominium's motion for a receiver, has not objected to any action taken by the Condominium in the State Court.

>    (ii)    **The Debtor Seeks to Relitigate Issues Decided by the State Court Without Exhausting Remedies in the State Court (Fourth and Sixth** *Sletteland* **Factors)**

52.    *Sletteland* and other decisions make clear that it is improper to use the bankruptcy court to collaterally attack decisions made by the State Court.  *See In re C-TC 9th Ave. P'Ship*, 113 F.3d at 1310; *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 228 (2d Cir. 1991); *In re The Bridge to Life, Inc.*, 330 B.R. 351, 356-57 (Bankr. E.D.N.Y. 2005).  *See also Carolin Corp. v. Miller*, 886 F.2d 693, 698-702 (4th Cir. 1989).   By filing for bankruptcy, the Debtor obtained an automatic stay of the Receiver Order.  The Debtor, however, did not even attempt to seek a stay of the Receiver Order from the Appellate Division before commencing this case.   As noted in *Sletteland*, such failure to exhaust its remedies evidences that the Debtor filed this bankruptcy case as a litigation tactic and thus in bad faith. *See In re Sletteland,* 260 B.R. at 665 ("unless the debtor can demonstrate that he has no alternative to stay the…judgment other than by Chapter 11, his petition must be dismissed.") (citing *In re Byrd*, 172 B.R. 970 (Bankr. W.D. Wash. 1994)).

53.    Another indicia of bad faith is forum shopping.  Here, in addition to staying the Receiver Order, the Debtor has also filed removal notices of each of the Actions to this Court.   It appears that the Debtor no longer considers the State Court to be a hospitable venue after the Receiver Order.   However, seeking an "alternative forum" to complete the litigation is not a proper reason to file a bankruptcy case.  *See In re The Bridge to Life, Inc.*, 330 B.R. at 357. Further, without resolving the litigation, it is unclear that the Debtor can, or has any intention of,

filing a plan of reorganization, which further evidences its bad faith.  Moreover, there is nothing here in need of reorganization.

54.     The facts in this case are strikingly similar to *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849 (Bankr. S.D.N.Y. 1984).   In *Wally Findlay Galleries*, the debtor filed a chapter 11 petition to forestall enforcement of a New York state court decision while the debtor appealed.  The Court stated that it "should not, and will not, act as a substitute for a supersedeas bond [*i.e.*, an appeal bond]."  *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. at 850. *See also In re The Bridge to Life, Inc.*, 330 B.R. at 356 ("Chapter 11 filing may not be used as a litigation tactic to avoid the posting of a supersedeas bond.")   The Court thus held that since the debtor is "unable to propose a meaningful plan of reorganization until the litigation with [the state court plaintiffs] is resolved," the debtor was not seeking to reorganize, but to relitigate, and dismissed the debtor's bankruptcy case.   *Id.*

55.     Here, the Debtor concedes that its sole objective is to invoke this Court's jurisdiction solely to stay the effectiveness of the Receiver Order and move all of the pending litigation to this Court.  It further appears that the Debtor has no intention of proposing a plan until the Actions are completed.  This Court should therefore reach the same result as *Wally Findlay Galleries* and dismiss the Debtor's bankruptcy case as a bad faith filing.

### (iii)    The Debtor Transferred Assets Beyond the Reach of Creditors (Second *Sletteland* Factor)

56.     The Debtor's purported inability to pay expenses after appointment of the receiver is a direct result of its own actions.   According to the SOFA, just within the last year, the Debtor transferred more than $1 million to insiders and affiliates.[7]  Had the Debtor not transferred this money, then the Debtor would have had more than sufficient funds to pay ongoing expenses after

---

[7] It is possible that the Debtor transferred additional funds to insiders and affiliates in previous years not covered by the SOFA.

the receiver was appointed.  It is the height of hypocrisy for the Debtor to transfer all of its funds

to insiders and then claim that it must file for bankruptcy because the State Court in the Receiver

Order requires rental income to first be used to pay defaulted common charges and assessments.

The Debtor's purported inability to pay debt service and insurance after appointment of the

receiver is a circumstance of its own making, and further evidences that the Debtor's bankruptcy

case was filed in bad faith and should be dismissed.

## II.    THE COURT SHOULD DISMISS THIS BANKRUPTCY CASE UNDER SECTION 305(a)

57.    Section 305(a) of the Bankruptcy Code, entitled "Abstention," provides, in

relevant part, that the court "may dismiss a case under this title, or may suspend all proceedings

in a case under this title, at any time if:  (1) the interests of creditors and the debtor would be

better served by such dismissal or suspension…".

58.    "Courts that have construed Section 305(a)(1) are in general agreement that

abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is

appropriate under that provision only where the court finds that both 'creditors and the debtor'

would be 'better served' by a dismissal." *In re Globo Comunicacoes e Participacoes S.A.*, 317

B.R. 235, 255 (S.D.N.Y. 2004).

59.    To determine whether dismissal is in the interests of creditors and the debtor,

courts within the Second Circuit have examined the following factors:

(1)    the economy and efficiency of administration;

(2)    whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;

(3)    whether federal proceedings are necessary to reach a just and equitable solution;

(4)    whether there is an alternative means of achieving an equitable distribution of assets;

(5)    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6)    whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7)    the purpose for which bankruptcy jurisdiction has been sought.

*See In re Selectron Mgmt. Corp.*, No. 10-75320 (DTE), 2010 WL 3811863, at *5 (Bankr. E.D.N.Y. Sept. 27, 2010) (citation omitted).

60.    "While all factors are considered, not all are given equal weight in every case. The decision to abstain under § 305(a)(1) should be made on a case-by-case basis." *In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013) (internal citations and quotes omitted). The last factor – the purpose for which bankruptcy jurisdiction has been sought – is "often stated as the most important factor." *See In re Persico Contracting & Trucking, Inc.*, No. 10-22736 (RDD), 2010 WL 3766555, at *4 (Bankr. S.D.N.Y. Aug. 20, 2010).

**(A)    THE MOST IMPORTANT FACTOR FAVORS DISMISSAL**

61.    Here, the purpose for which bankruptcy jurisdiction is sought strongly favors dismissal because as discussed above, this case is an improper invocation of bankruptcy jurisdiction. The Debtor and the Condominium have been litigating for years in three separate proceedings. After an adverse decision in one of those proceedings, the Debtor now seeks to exploit the bankruptcy system to relitigate the adverse decision, and move the long-standing Actions – at least one of which is on the eve of trial – to the bankruptcy court. The Actions should be resolved in their proper forum – the State Court – and there is no reason for this Court to get involved in pending litigation that involves purely state law issues, is substantially advanced, and is moving towards a prompt conclusion in the State Court.

62.    Courts that have considered two-party disputes like this one where the state court

or other non-bankruptcy forum was in a better position to resolve the dispute have routinely determined that it is in the best interest of the debtor and its creditors for the Court to abstain from and dismiss under section 305(a) of the Bankruptcy Code.  *See, e.g.*, *In re Selectron Mgmt. Corp.*, 2010 WL 3811863, at *6(dismissing case under section 305(a)(1) and holding that where a bankruptcy case "is really a two-party dispute that can be addressed in state court, as this case is, then the Court can and will abstain."); *In re Duratech Indus., Inc.*, 241 B.R. 291 (Bankr. E.D.N.Y. 1999) *aff'd* 241 B.R. 283 (E.D.N.Y. 1999) (dismissing bankruptcy where the petition was filed to affect the outcome of a two-party dispute between the debtor and one creditor in state court, and where resolution of the bankruptcy depended entirely on the outcome of the state court proceeding); *In re Accident Claims Determination Corp.*, 146 B.R. 64, 67 (Bankr. E.D.N.Y. 1992) (abstaining "where adequate remedies lie in the state court, the bankruptcy court is not the appropriate forum for the case."); *In re Mountain Dairies, Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007) (case should be dismissed under 305(a)(1) because it "is essentially a two-party dispute for which the parties have adequate remedies in state court."); *In re Parsons*, No. 11-30071, 2012 WL 1357183, at *2 (Bankr. S. Dak. Apr. 18, 2012) (dismissing case under section 305(a)(1) because case was two-party dispute better resolved in mandatory arbitration, holding that "the only purposes served by this bankruptcy case are delay and perhaps forum shopping, neither of which furthers the chapter 11 purpose of financial rehabilitation."); *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 634 (Bankr. N.D. Okla. 2005) (dismissing case under section 305(a)(1) because it was essentially a two-party dispute).

63.    Based on the foregoing, this bankruptcy case serves no purpose while adding additional expense to the Debtor.  Thus, the most important factor of section 305(a) – that this case has been filed for an improper purpose – has been satisfied and the case should be dismissed

pursuant to section 305 of the Bankruptcy Code.

**(B)    THE OTHER RELEVANT FACTORS SUPPORT DISMISSAL UNDER SECTION 305**

64.    The other relevant factors in this Circuit also strongly support dismissal under section 305.    It would, for the reasons discussed above, be more efficient and economical, for the Court to abstain from and dismiss the Debtor's bankruptcy case.    In addition, another forum is available where the parties have been litigating for years – the State Court – and this bankruptcy case is not necessary to reach a just and equitable resolution of the Actions.[8]    Based on all of the relevant factors, this bankruptcy case should be dismissed pursuant to section 305 of the Bankruptcy Code.    In the alternative, the Court should suspend the case pending resolution of the Actions by the State Court.

**III.    IN THE ALTERNATIVE, THE COURT SHOULD ABSTAIN AND REMAND THE ACTIONS AND MODIFY THE STAY TO PERMIT THE CONDOMINIUM TO CONTINUE THE ACTIONS.**

**(A)    THE COURT MUST, OR SHOULD, ABSTAIN AND THE ACTIONS SHOULD BE REMANDED**

65.    The Debtor has filed removal notices of each of the Actions to this Court as related to this bankruptcy proceeding pursuant to 28 U.S.C. § 1452(a).[9]    In the event that this bankruptcy case is dismissed, the Actions must be remanded back to the State Court.    If, however, the Court does not dismiss this bankruptcy case, the Condominium submits that the Court should abstain, and remand the Actions to State Court for the reasons set forth herein.

---

[8] The other factors are not relevant to these circumstances.  The Debtor is not in financial distress, so there is no need for an alternative means to equitably distribute assets.  Further, because this is a two party dispute, there is no need for a traditional multi-party composition or out-of-court arrangement.   Last, there is no non-federal insolvency proceeding.

[9] The Condominium understands that the Actions have been removed to this Court, but certain of the Actions may not be docketed in this Court as of the date of this Motion.  The Condominium seeks relief as to all the Actions, and consents to removal to this Court solely for the limited purpose of enabling the Court to remand as to all of the Actions, even those that have been removed to this Court, but are not yet docketed.

### (i)    Mandatory Abstention is Appropriate

66.    Pursuant to Section 28 U.S.C. § 1334(c)(2), the Court must abstain if "(1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is related to but not arising in a bankruptcy case or arising under the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be timely adjudicated in state court."  *In re Int'l Tobacco Partners, Ltd.*, 462 B.R. 378, 390 (Bankr. E.D.N.Y. 2011) (citing *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 579 (E.D.N.Y. 2009)) (citation and internal quotation marks omitted).  All of these factors are present here, and thus the Court must abstain from deciding the Actions.

### *(1)    Plaintiffs' Request to Abstain is Timely (Factor 1)*

67.    This request for abstention is timely.  "The relevant considerations include (1) whether the movant 'moves as soon as possible after he or she should have learned the grounds for such a motion,' …(2) whether the moving party has already invoked the substantive process of the federal court on a matter going to the merits of the complaint, and in particular, moved for abstention only after receiving an unfavorable outcome, …and (3) 'whether the granting of the motion would prejudice or delay the rights of others.'"  *In re New 118th LLC*, 396 B.R. 885, 893-94 (Bankr. S.D.N.Y. 2008).  (citation and quotation omitted).

68.    As to the first consideration, this request is made less than a month after the Actions were removed to this Court.  *See, e.g., Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 712 (S.D.N.Y. 2013) (request for abstention timely when made 37 days after removal of state court action).  As a result, the first consideration suggests the request is timely.

69.    As to the second consideration, the Condominium never sought to invoke the process of any other federal court related to the merits of the Actions.  The second consideration is thus also satisfied.

24

70.     As to the final consideration, there would be no prejudice to the Debtor because the State Court is better situated to address the Actions, all of which are purely matters of state law.  On the other hand, the Condominium will be significantly prejudiced by further delay in the adjudication of the Actions.  These considerations support a finding that the request for abstention is timely.

### (2)     The Pending Actions (Factor 5) Assert State Law Claims (Factor 2)

71.     Each of the Actions previously pending in the State Court, whether commenced by the Debtor or the Condominium, are based upon state law causes of action.   Thus, factors 2 and 5 support invocation of mandatory abstention.

### (3)     The Sole Basis for Jurisdiction is 28 U.S.C. § 1334 (Factor 4); the Court Lacks 'Arising Under' or 'Arising In' Jurisdiction (Factor 3)

72.     The Debtor removed the Actions to this Court based upon 28 U.S.C. §1452(a) and their relatedness to the bankruptcy proceeding.   The Debtor has asserted no basis, and there is no basis, for federal jurisdiction over the state law claims in the Actions other than the existence of the bankruptcy case.  Thus, the sole basis for jurisdiction is 28 U.S.C. § 1334.

73.     This Court lacks 'arising under' or 'arising in' jurisdiction over the Actions because they have no relationship to the Bankruptcy Code or this bankruptcy case.  Proceedings "arise under" title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code." *In re Fairfield Sentry Ltd. Litigation*, 458 B.R. 665, 674 (S.D.N.Y. 2011). The Actions are premised upon state law matters rather than substantive rights created by the Bankruptcy Code.  Thus, there is no "arising under" jurisdiction.

74.     Proceedings "arise in" a bankruptcy case if they "'are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the

bankruptcy.'" *Baker v. Simpson,* 613 F.3d 346, 351 (2d Cir. 2010) (per curiam) (*quoting In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987)).   The "mere fact that the cause of action would never have arisen absent [a] particular bankruptcy is not enough to confer jurisdiction." *Winstar Holdings, LLC v. Blackstone Group L.P.*, No. 07-cv-4634, 2007 WL 4323003, at *4 (S.D.N.Y. Dec. 10, 2007).  Further, the mere fact that claims may be traced back to a bankruptcy case does not create arising in jurisdiction.  *See, e.g., McMillan v. Barclays Bank PLC*, No. 13-cv-01095, 2014 WL 4364053, at *3 (S.D.N.Y. Sept. 3, 2014) (no arising in jurisdiction when plaintiff asserts garden variety tort claims just because such claims can perhaps be traced back to a bankruptcy case).

76.      Here, the Actions assert garden-variety state law causes of action that were being litigated for years prior to the filing of this bankruptcy case, and exist wholly outside of the bankruptcy case.  Thus, the claims do not 'arise in' the bankruptcy case.

### *(4)      The State Court Action Can be Timely Adjudicated in State Court (Factor 6)*

76.      "Absent contrary evidence, a federal court must presume that a state court will operate efficiently and effectively in adjudicating the matters before it."  *In re AOG Entm't, Inc.*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017).  Moreover, this factor focuses on "whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case."  *In re Ames Dep't Stores, Inc.*, Case No. 01-42217, 2006 WL 1288586, at *12 (Bankr. S.D.N.Y. Apr. 19, 2006) (citing *In re Midgard Corp.*, 204 B.R. 764, 778 (B.A.P. 10th Cir. 1997)).

77.      There is no evidence that the State Court cannot timely adjudicate the matter. Moreover, the parties had been actively litigating the Actions, and two of the Actions (the Construction Defect Action and Disputed Reserve Action) are nearly ready for trial.

78.     Because all six factors for mandatory abstention are present, this Court must abstain from the Actions pursuant to 28 U.S.C. § 1334(c)(2).

### (ii)    Permissive Abstention is Appropriate

79.     "Pursuant to 28 U.S.C. § 1334(c)(1), a court may abstain from hearing a proceeding within its jurisdiction in the interest of justice, or in the interest of comity with State courts or respect for State law." *In re Dreier*, 438 B.R. 449, 458 (Bankr. S.D.N.Y. 2010) (internal quotation omitted). Courts in this Circuit consider twelve factors in determining whether discretionary abstention is appropriate under 28 U.S.C. § 1334(c)(1):

    i.    the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

    ii.    the extent to which state law issues predominate over bankruptcy issues;

    iii.    the difficulty or unsettled nature of the applicable state law;

    iv.    the presence of a related proceeding commenced in state court or other nonbankruptcy court;

    v.    the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

    vi.    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

    vii.    the substance rather than form of an asserted "core" proceeding;

    viii.    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

    ix.    the burden on the court's docket;

    x.    the likelihood that the commencement of a proceeding in a bankruptcy court involves forum-shopping by one of the parties;

    xi.    the existence of a right to a jury trial; and

    xii.    the presence in the proceeding of nondebtor parties.

*See Osuji v. Federal Nat'l Mortgage Assoc.*, 571 B.R. 518, 521 (E.D.N.Y. 2017) (citations omitted).

80.     Not all of these factors must be applied by the Court in determining permissive abstention. *See In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641-642 (Bankr. S.D.N.Y. 2009); *Barbaro v. Wider (In re Wider)*, Case. No. 09-72993 (AST), 2009 WL 4345411, at *2 (Bankr. E.D.N.Y. Nov. 30, 2009).   Here, however, the vast majority of these factors weigh in favor of abstention.

### *(1)     Resolving the Non-Core Dispute (Factor 7) Has No Impact on the Administration of the Estate (Factor 1)*

81.     As set forth above, the Actions are merely "related to" the bankruptcy case, and thus are not core proceedings.    The Actions also will have no impact on the administration of the estate because there is nothing to administer.   The Debtor is not experiencing financial distress nor are any of the policies of the Bankruptcy Code implicated.  *See* 1 Collier on Bankruptcy (16th ed. 2015), ¶1.01[1].

82.     This case is similar to *In re Int'l Tobacco Partners, Ltd.*, 462 B.R. 378 (Bankr. E.D.N.Y. 2011).   In that case, the Court found that Factor 1 weighed in favor of abstention when:

> the main bankruptcy case cannot be resolved until both adversary proceedings have been tried to conclusion.  This Court has no reason to believe that the Commonwealth of Massachusetts cannot get to a determination on the merits of this adversary proceeding just as quickly as this Court could.

462 B.R. at 393.

83.     Here, there is no reason to believe that the State Court cannot resolve the Actions promptly, and thus there is no effect on the administration of the estate.

> **(2)**    ***The Actions Were Pending in State Court (Factor 4) to Pursue
> State Law Causes of Action (Factor 2) in a Jury Trial
> (Factor 11) against Nondebtor Parties (Factor 12)***

84.    Each of the Actions had been commenced well prior to the Petition Date in State

Court to pursue state law causes of action.   The parties have been vigorously litigating the

Actions before the State Court for years.   Abstention is appropriate to send the Actions back to

the State Court, which is much more familiar with the issues in these Actions and which involve

solely issues of New York law.   *See In re Fierro*, Case Nos. 14-41439 (NHL) & 14-41440

(NHL), 2015 WL 3465753 (Bankr. E.D.N.Y. May 29, 2015) (abstention favored when State

Court is more familiar with the case because of the extensive litigation in that court).

85.    Moreover, in the Construction Defect Action, the Condominium requested a jury

trial and has asserted claims against SDS Leonard and other nondebtors.   Accordingly, these

factors also weigh in favor of abstention.

> **(3)**    ***The Jurisdictional Basis in Solely 28 U.S.C. § 1334 (Factor 5)
> and the Debtor Seeks to Forum Shop (Factor 9) to Resolve
> Claims That are Not Related to the Bankruptcy Case (Factor 6)
> or any Core Bankruptcy Matters (Factor 7)***

86.    The sole basis of removal of the Actions to this Court was the existence of this

bankruptcy proceeding.   Thus, the jurisdictional grant under 28 U.S.C. § 1334 is the only

connection to this bankruptcy case.

87.    The claims asserted in the Actions have no relationship to the Bankruptcy Code,

the bankruptcy case, or any core bankruptcy matter.   Indeed, there is no reason for this Court to

substitute itself for the State Court.   The Debtor merely seeks to forum shop after receiving an

adverse ruling from the State Court on the Receiver Order.

88.     Based on the foregoing, all or the vast majority of the applicable factors weigh in favor of this Court abstaining from determining the Actions and none suggest a contrary result.[10]

### (iii)     Equitable Remand is Appropriate

89.     28 U.S.C. § 1452(b), known as equitable remand, provides that "the court on which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."   "Remand is both permissible and advisable where a removed action was pending in state court prepetition and where the federal court has determined to abstain."  *In re Exeter Holding, Ltd.*, Case No. 11-77954 (AST), 2013 WL 1084548, at *7 (Bankr. E.D.N.Y. Mar. 14, 2013) (citing cases).   Because the Court must or should abstain, the Court should therefore remand.  *See Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011) (the inquiries for permissive abstention and equitable remand are essentially the same and often analyzed together).  *See also In re Tornheim*, 181 B.R. 161, 170 (Bankr. S.D.N.Y. 1995) ("a bankruptcy court is traditionally reluctant to retain a state court mortgage foreclosure proceeding that has been removed to it.") (citing cases).

90.     Based on the foregoing, for the reasons set forth above concerning why the Court must or should abstain, the Court should remand the Actions back to the State Court.

### (B)     IF THE ACTIONS ARE REMANDED WITHOUT DISMISSAL OF THE CASE, THE COURT SHOULD MODIFY THE AUTOMATIC STAY TO PERMIT THE CONDOMINIUM TO PURSUE THE ACTIONS

91.     Section 362(d) of the Bankruptcy Code provides in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay…

> (1) for cause, including the lack of adequate protection of an interest in property for such party in interest;

---

[10] The factor not discussed in detail herein (Factor 9) is neutral concerning abstention.

(2)  with respect to a stay of an act against property under subsection (a) of this section, if –

   (A)    the debtor does not have an equity in such property; and

   (B)    such property is not necessary to an effective reorganization.

92.    Section 362(d) of the Bankruptcy Code is mandatory, not permissive. *In re Zeoli,* 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000). "Congress has provided that 'the Court *shall* grant relief from the stay' for any of the reasons stated in the three subsections." *In re Zeoli,* 249 B.R. at 63 (citations omitted).

93.    Pursuant to section 362(d)(1), the stay shall be lifted for "cause". Neither the statute nor the legislative history defines the term "cause." *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990). Whether cause exists should be therefore determined on a case-by-case basis. *In re Balco Equities Ltd., Inc.,* 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004)(citation omitted). Once the movant makes its *prima facie* case of cause, the burden shifts such that "the debtor has the ultimate burden of proof to show that cause does not exist to grant relief from the stay." *Montague Pipeline Techs. Corp. v. Grace/Lansing (In re Montague Pipeline Techs. Corp.*), 209 B.R. 295, § (Bankr. E.D.N.Y. 1997) (citation omitted).

94.    The United States Court of Appeals for the Second Circuit has observed that the following factors are considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum:

   (1)    whether relief would result in a partial or complete resolution of the issues;

   (2)    the lack of any connection with or interference with the bankruptcy case;

   (3)    whether the other proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5)    whether the debtor's insurer has assumed full responsibility for defending it;

(6)    whether the action primarily involves third parties;

(7)    whether litigation in another forum would prejudice the interests of other creditors;

(8)    whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)   the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)   whether the parties are ready for trial in the other proceeding; and

(12)   the impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286.  *See also In re Taub*, 438 B.R. 39, 44-45 (Bankr. E.D.N.Y. 2010).

95.    Only those factors relevant to a particular case need be considered, and the court need not give equal weight to each factor.  *In re Keene Corp.*, 171 B.R. 180, 183 (S.D.N.Y. 1994) (citing *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992)).    Consideration of the relevant *Sonnax* factors makes clear that the Condominium's request for modification of the automatic stay should be granted.

96.    Lifting the stay to complete the Actions will result in the swift adjudication of the Actions – which is the only matter of dispute concerning the Debtor.  The Condominium has been litigating with the Debtor and its predecessor, SDS Leonard, for more than five years before the State Court.   As of the Petition Date, two of the Actions were near the end of discovery and thus nearly trial ready.

97.     Litigation in the State Court would also not prejudice any of the Debtor's creditors.  For example, with respect to the Foreclosure Action, National Bank of NYC is a party to such litigation and the Condominium has provided it with notice of every action in that case.

98.     Moreover, completion of the Actions is a necessary predicate to any relief the Debtor may seek in this Court.   This case is the result of a two-party dispute between the Condominium and the Debtor, and thus that dispute must be promptly resolved before any further action in this Court.   The State Court is intimately familiar with these cases, and is well situated to make a prompt determination in the Actions.  Further, the issue solely concern New York law.   Lifting the stay is thus appropriate.

## IV.    PENDING RESOLUTION OF THE CONDOMINIUM'S MOTION, OR SHOULD THE MOTION BE DENIED, THE RECEIVER SHOULD REMAIN IN PLACE.

99.     Should the Court not dismiss or abstain, the Court should permit the receiver to remain in place and collect rent from the Debtor's tenants in accordance with Section 543(d) of the Bankruptcy Code.

100.     Section 543 provides that, ordinarily, a receiver must deliver all property of the estate to the Debtor.  Section 543(d), however, provides that:

> After notice and hearing, the bankruptcy court—(1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property…

101.     A court considering whether to exercise its discretion under Section 543(d)(1) considers several factors indicative of whether the interest of creditors would be better served:

> (1) whether there will be sufficient income to fund a successful reorganization;

> (2) whether the debtor will use the turnover property for the benefit of the creditors;

> (3) whether there has been mismanagement by the debtor;

(4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and

(5) the fact that the bankruptcy automatic stay has deactivated the state court receivership action.

*See Dill v. Dime Sav. Bank (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994) (citations omitted).

102.    Based on the foregoing factors, the receiver should be excused from section 543(d) and be permitted to continue collecting rent from the Debtor's tenants.   The Condominium has grave concerns that the Debtor has been and continues to be mismanaged.  As set forth in the Budget, the Debtor is extremely profitable, yet the Debtor has practically no cash on hand as of the Petition Date because any free cash was transferred to insiders and affiliates of the Debtor.   Considering the Debtor's extended campaign to avoid the payment of amounts rightfully owed to the Condominium, the Condominium has no faith that the Debtor intends to uphold its obligations under the Bankruptcy Code while the Actions are completed.  Permitting the receiver to collect rent while the Actions are completed will maintain the status quo and ensure that the Debtor does not squander, misappropriate, or continue to transfer away its rent receipts.  *See In re CCN Realty Corp.*, 19 B.R. 526, 529 (Bankr. S.D.N.Y. 1982) (receiver excused from compliance when bank "justifiably concerned that the turnover of the collected rent proceeds may be a prelude to their being frittered away.").  It will also minimize interference with an order of the State Court – *i.e.*, the Receiver Order – which was entered only after several hearings and submission of papers by the Debtor and the Condominium.

103.    For the foregoing reasons, the Condominium submits that the receiver should be excused from compliance with section 543(d) of the Bankruptcy Code and thus be permitted to collect rent from the Debtor's tenants pending a final resolution of the Actions.

**NOTICE**

104.    Notice of the Motion is being served upon the Debtor and all parties that have

filed a Notice of Appearance and Request for Notices.

105.    No previous motion for the relief requested herein has been made to this or any

other Court.

**CONCLUSION**

106.    For the reasons set forth herein, the Condominium respectfully requests that this

Court enter an order (i) dismissing the Debtor's bankruptcy case due to bad faith, or in the

alternative, or in the alternative, (ii) abstaining from and dismissing the Debtor's bankruptcy case

pursuant to section 305 of the Bankruptcy Code, or in the alternative, (iii) granting stay relief to

permit continuation of the Actions in the State Court, and, in such connection, abstaining from

and remanding the Actions to State Court, or in the alternative, (iv) pursuant to section 543(d) of

the Bankruptcy Code, relieving the receiver from its obligations under Bankruptcy Code

Sections 543(a), (b) and (c), and (v) granting such other relief as is just.

Dated:  New York, New York
           October 31, 2017

                                        GOLENBOCK EISEMAN ASSOR BELL
                                          & PESKOE LLP
                                        711 Third Avenue
                                        New York, New York 10017
                                        Tel: (212) 907-7300
                                        Fax:  (212) 754-0777

                                        By:    /s/ Jonathan L. Flaxer
                                                 Jonathan L. Flaxer, Esq.
                                                 Michael S. Weinstein, Esq.

                                        *Counsel for Loft Space Condominium*