DELBELLO DONNELLAN WEINGARTEN          *Hearing Date: November 21, 2017*
WISE & WIEDERKEHR, LLP                 *Hearing Time:  11:00 a.m.*
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

                                         Chapter 11

LW RETAIL ASSOCIATES LLC,              Case No. 17-45189 (ess)

                      Debtor.
------------------------------------------------------------X

**OPPOSITION OF THE DEBTOR TO MOTION OF LOFT SPACE
CONDOMINIUM FOR AN ORDER (I) DISMISSING THE CHAPTER 11 CASE
PURSUANT TO 11 U.S.C. §1112; (II) FOR THE COURT TO ABSTAIN FROM
AND DIMISS THE DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11.U.S.C.
§305; (III) TO REMAND THREE LITIGATIONS AND FOR RELIEF FROM
THE AUTOMATIC STAY TO CONTINUE THE LITIGATIONS, OR (IV) TO
<u>LEAVE THE RECEIVER IN PLACE PURSUANT OT 11 U.S.C. §543</u>**

      LW Retail Associates, LLC (the "<u>Debtor</u>"), debtor and debtor in possession in the

above-captioned proceeding, in opposition to the motion ("<u>Motion</u>") of the Loft Space

Condominium, by its Board (the "<u>Board</u>"), for the entry of an order (I) dismissing the

chapter 11 case pursuant to 11 U.S.C. §1112; (II) abstention and dismissal pursuant to 11

U.S.C. §305; (III) to remand three litigations and for relief from the automatic stay to

continue the litigations, or (IV) to leave the receiver in place pursuant to 11 U.S.C. §543

(the "<u>Motion</u>"),  respectfully represent as follows:

1.    The Debtor asserts procedural and substantive objections to the Motion. Section I of

this objection will address procedural objections.  Section II of this objection will address the

background facts and substantive objections to the Motion.

## SECTION I

## PROCEDURAL OBJECTIONS TO THE MOTION

### A.  The Motion to Dismiss and Abstain

2.    The Board failed to serve all necessary parties with the Motion.

3.    Bankruptcy Rule 2002(a)(4) provides in part as follows:

> *Twenty-One-Day Notices to Parties in Interest*.  Except as provided in subdivisions (h). (i), (l), (p) and (q) of this rule, the clerk, or some other person as the court may direct shall give the debtor, the trustee, **all creditors** and indenture trustees at least 21 days' notice by mail of:

> (4) In a chapter 7 liquidation, a chapter 11 reorganization case, or a chapter 12 family farmer debt adjustment case, the **hearing on the dismissal of the case** or the conversion of the case to another chapter, unless the hearing is under §707(a)(3) or §707(b) or is on dismissal of the case for failure to pay the filing fee;

> [emphasis provided]

4.    The Board failed to serve **all creditors**, thus depriving them of due process.  Copies of the Board's Affidavits of Service of the Motion and Notice of the Motion are annexed as **Exhibit A.**

5.    Most notably, the Board failed to serve Itkowitz PLLC, which filed a Notice of Appearance, and The City of New York, a very significant secured creditor.

6.    Following is a complete list of creditors from the Matrix, Schedules, Notices of Appearance and Proofs of Claim who did not receive due process:

| Party Not Served | Where Party Is Listed |
|---|---|
| Itkowitz PLLC<br>26 Broadway, 26th Fl.<br>New York, NY 10004 | *Notice of Appearance + Matrix + Schedule F* |
| New York City Dept. of Finance<br>Office of Legal Affairs<br>Collection Unit<br>345 Adams Street, 3rd Fl.<br>Brooklyn, NY 11201 | *Schedule D + Matrix + Proof of Claim* |

| | |
|---|---|
| Gumley Haft Real Estate Mgmt.<br>415 Madison Ave., 5th Fl.<br>New York, NY 10017 | *Schedule D additional notice + Matrix* |
| Epi Design Network<br>434 E. 52nd Street #9<br>New York, NY 10022 | *Schedule F + Matrix* |
| Top Out Consultants<br>312 Broadway, Ste 404<br>New York, NY 10007 | *Schedule F + Matrix* |
| Warren Furman<br>156 William Street, Ste 800<br>New York, NY 10007 | *Schedule F + Matrix* |
| WYS Design LLC<br>63 Gerene Street, #505<br>New York, NY 10012 | *Schedule F + Matrix* |
| Esperanto Restaurant LLC<br>78 Leonard Street<br>New York, NY 10013 | *Schedule G + Matrix* |
| Linda Greco<br>132 Remsen Street<br>Brooklyn, NY 11201 | *Schedule H + Matrix* |
| Corporation Counsel NYC<br>Tax & Bankruptcy Division<br>100 Church St., Room 5-240<br>New York, NY 10007 | *Matrix* |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | *Matrix* |
| NYS Department of Tax & Finance<br>Bankruptcy Special Procedures<br>P.O. Box 5300<br>Albany, NY 12205-0300 | *Matrix* |
| Security Exchange Commission<br>NY Regional Office<br>200 Vessey St., Suite 400<br>New York, NY 10281 | *Matrix* |

U.S. Attorney's Office                    *Matrix*
Tax & Bankruptcy Unit
86 Chambers St., 3rd Fl.
New York, NY 10007

Copies of the Matrix and NYC's Proof of Claim are annexed as **Exhibit B**.

7.    Each of these creditors has a significant stake in this chapter 11 case, but did not receive service of the motion to dismiss according to the Board's affidavits of service.

8.    The Board also failed to give the correct days' notice of the Motion.  Bankruptcy Rule 9006(f) requires an additional three days' notice for motions served by mail.  The Motion was served exactly twenty-one days before the hearing date, with no days added for mailing.  Thus, the few creditors who were served received insufficient time to respond.

9.    The Board also failed to serve the Debtor.  A motion to dismiss is a contested matter. Contested matters are addressed in Bankruptcy Rule 9104(b), which requires motions to be served pursuant to Bankruptcy Rule 7004(e) and (g) which require service upon the Debtor *and* the Debtor's attorney.

10.    The failure to provide due process of a motion to dismiss to even the smallest creditor is a significant procedural defect that requires denial of the motion.

11.    As the court expressed in *In re Cabalar Enterprises, Inc.*, 2007 WL 7540956 at 5 (B.A.P. 9th Cir. 2007):

> **Courts have a heightened responsibility to assure that due process rights are respected when a hearing may result in dismissal of the bankruptcy case**. "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances."…
>
> … under Rule 2002(a)(4), Cabalar (and all other interested parties in the case) would have been entitled to twenty days' notice of the hearing on any dismissal motion. This extended time for notice of a motion to dismiss, as opposed to other types of motions, see Rule 9006(d) (prescribing at least five days' notice of a motion hearing), evidences the **drafters' intent that dismissal proceedings take place only after ample advance notice is given to those potentially effected**…

However, the procedural standards established by the Code and Rules support the notion that, **when it comes to dismissal of bankruptcy cases, due process demands adequate notice and opportunity to be heard.**

[Citations omitted] [Emphasis provided]

12. Accordingly, the Motion cannot be considered and must be denied.

## B.   The Motion to Remand

13. A motion to remand an action must be addressed to the court where the action is pending.  See 28 U.S.C. §1447.

14. None of the three actions referenced in the Motion are pending before this Court. The Board's request for this Court to enter orders in actions pending before other Judges is defective and improper.

15. Following is the current procedural status of each of the three actions:

    a.  Disputed Assessments Action.

        This action is pending in the United States District Court, Eastern District of New York, before the **Honorable I. Leo Glasser**.

           i.  Caption:  *Loft Space Condominium v. LW Retail Associates LLC, National Bank of New York City, New York City Environmental Control Board, New York State Department of Taxation and Finance, New York City Department of Finance, Millennium Sports Management Company LLC, Esperanto Restaurant LLC, Trimasa Restaurant Partners LLC, Crunch IP Holdings, LLC, Crunch Fitness, Crunch Tribecca, Linda Garcia Rose & Associates, PLLC, Donald LaRosa, Wendy Zelnick, Bayside Buildings, Inc., Empire State Environmental, LLC, Michael Mailer Films, Pas De Deux Salon, ABC Cor. No 1 – 4.*

          ii.  Original Court of Jurisdiction:  Supreme Court of the State of New York, New York County, Index No. 150147/2016

         iii.  October 10, 2017 – The action was removed to the United States District Court, SDNY, Docket No. 1:17-cv-07443 (JMF)

      iv. <u>October 16, 2017</u> – Hon. Jessee M. Furman, United States District Judge, SDNY, entered an order directing the case be transferred to the United State District Court, EDNY

      v. <u>October 24, 2017</u> – The action was transferred to the United State District Court, EDNY, Docket No. 1:17-cv-06175 (ILG)

b. <u>Capital Reserve Fund Action</u>.

This action is pending in the United States District Court, Southern District of New York, before the **Honorable Victor Marrero.**

      i. <u>Caption</u>: *LW Retail Associates, LLC v. The Loft Space Condominium, and Board of Managers of the Loft Space Condominium.*

      ii. <u>Original Court of Jurisdiction</u>:  Supreme Court of the State of New York, New York County, Index No. 155101/2015

      iii. <u>October 10, 2017</u> – The action was removed to the United States District Court, SDNY, Docket No. 1:17-cv-07446 (VM)

c. <u>Breach of Contract Action</u>.

This action is pending in the United States Bankruptcy Court, Southern District of New York, before the **Honorable Stuart M. Bernstein.**

      i. <u>Caption</u>: *Board of Managers of Loft Space Condominium v. SDS Leonard LLC, G46 LLC, Linda E. Greco, Louis V. Greco, Jr., Debra Greco, Hal Friedman, Justa Viafara, Theresa Riddle, Galli Engineering P.C., Richard D. Galli, LW Retail Associates LLC.*

      ii. <u>Original Court of Jurisdiction</u>:  Supreme Court of the State of New York, New York County, Index No. 652731/2012

      iii. <u>October 10, 2017</u> – The action was removed to the United States District Court, SDNY, Case No. 1:17-cv-07453 (PKC)

      iv. <u>October 16, 2017</u> – Hon. P. Kevin Castel, United States District Judge, SDNY, entered an order directing the case be referred to the United State Bankruptcy Court, SDNY.

      v. <u>October 30, 2017</u> – The action was transferred to the United State Bankruptcy Court, SDNY, Case No. 17-01187 (SMB)

Copies of the dockets in the actions are annexed as **Exhibits C, D and E**, respectively.

16. Motion is further defective because the Board failed to serve the Motion on any of the other defendants in the actions. Certainly, all parties to an action are entitled to receive due process of a motion to remand that action. In the Disputed Assessments Action, no less than 15 other defendants who may want to take a position on a motion to remand. In the Breach of Contract Action, the Galli Defendants are actively represented by counsel who was never served, and thus was denied the opportunity to be heard.

17. Accordingly, the Motion cannot be considered and must be denied.

## REQUEST FOR MEDIATION

18. The Board's defective Motion may cause significant delay in the resolution of these disputes, and of the entire chapter 11 case. This delay is to the detriment and cost of not only the Board and the Debtor, but also the Debtor's other creditors.

19. The Debtor's primary desire is to resolve all disputes with the Board while remaining in compliance with its mortgage and other obligations. Although there are three pending actions, they all involve common issues and for the most part common parties. A swift resolution of these disputes benefits all interested parties.

20. Therefore, the Debtor believes it is in the best interests of all parties involved for this Court to direct the parties to participate in good faith in the Mediation Program.

21. A swift and consensual resolution of the pending disputes will benefit all parties. It would be a waste of precious resources to stall this case with months of fighting over motions to dismiss which are rarely granted, motions to remand actions that are not yet before this Court, and motions to place a receiver (who never even commenced his duties) in control of the Debtor's assets. Needless costly litigation is not what's needed here. What's needed is two parties with open minds to reaching a swift resolution, which benefits all.

**Conclusion**

22.   The procedural and due process defects in the Motion mandate its denial.

23.   However, that does not mean this case must be unnecessarily delayed.  The Court should direct the parties to participate in good faith in the Mediation program.

24.   The Mediation Program can only benefit all of the creditors and the estate by avoiding protracted and unnecessary litigation.

**SECTION II**

**SUBSTANTIVE OBJECTIONS TO THE MOTION**

**PRELIMINARY STATEMENT**

25.   If the Court determines to consider the Motion despite the procedural defects, following is the Debtor's substantive objection, reserving all rights to supplement.

26.   This Debtor intends to, and has the ability to, reorganize.  Even in a worst-case scenario, the Debtor has millions of dollars in equity in its commercial units and operates at a profit.  This is not a non-operating entity that cannot comply with its post-petition obligations and has no prospect of reorganizing.

27.   This chapter 11 case was filed to protect the Debtor's assets for the benefit of all creditors while the Debtor resolves its disputes with the Board.  If the Board had its way, it would line its pockets with 100% of the Debtor's rents to the detriment of all creditors, causing the Debtor to default on its $6 million dollar mortgage, its real estate tax obligations, and its insurance payments.  This would further result in a destabilization of the Debtor's tenant's valuable leases and businesses.  Contrary to what the Board would have this Court believe, there has been no adjudication of the disputes between the Board and the Debtor. There is no judgment of finding of liability.  Thus, it is extremely important for the Debtor

and its Estate to benefit from the protections of chapter 11 pending a resolution of the disputes with the Board.

28.  Following is a summary of the disputes.

## BACKGROUND FACTS

29.  The basis of Debtor's Chapter 11 bankruptcy filing is related to the three state court actions litigations in which Debtor is party, to wit: (i) *Loft Space Condominium v. LW Retail Associates, LLC, et al* (New York Supreme Court Index No. 150147/2016 (the "Disputed Assessments Action"); (ii) LW Retail Associates, LLC v. Board of Managers of the Loft Space Condominium (New York Supreme Court Index No. 155101/2015) (the "Capital Reserve Action"); and (iii) *Loft Space Condominium v. SDS Leonard, LLC, et al* (New York Supreme Court Index No. 652731/2012)(the "Breach of Contract Action").

30.  These three actions are substantially related to each other.

31.  The Condominium consists of 29 residential units and four commercial units located at 78-80 and 82 Leonard Street, New York, New York and 79-81 Worth Street, New York, New York.  Debtor is the owner of the four commercial units (the "Commercial Units").  Pursuant to the terms of the Condominium Offering Plan, each of the condominium units were conveyed in "as-is" condition.

32.  In connection with the Condominium conversion, a capital reserve fund of approximately $623,000 (the "Capital Reserve Fund") was created by the sponsor, SDS Leonard, LLC, an entity affiliated with Debtor, to be used exclusively for capital repairs, replacements and improvements necessary for the health and safety of the occupants of the Condominium.

33.  The Commercial Units are currently tenant-occupied, and Debtor receives monthly rental proceeds in the amount of $89,000. Debtor's expenses for the four commercial units, including mortgage payments, real estate taxes, condominium charges, water/sewer charges, and insurance is approximately $38,000 per month for ordinary expenses, and balloons to $180,000 twice a year when real estate tax payments are due.  With these figures, the Debtor operates at a healthy profit.

34.  The Debtor also has substantial equity in the Commercial Units, with an appraised value of $12,200,000, and a mortgage of only $6,000,000.

**The Disputed Assessments**

35.  The Debtor has a 25% interest in the Condominium, proportionate to the residential unit owners.

36.  On July 14, 2014, the Condominium issued its first assessment to the condominium unit owners in the amount of $650,000.  The work performed under the first assessment was for sidewalk vault restoration and fire system repairs.

37.  On February 3, 2016, the Condo issued its second assessment in the amount of $1,500,000.  The second assessment involves work to Worth Street and Leonard Street roofs ($412,000 and $580,000 respectively), as well as work to the façade ($250,000) and two elevators ($250,000).

38.  The Condominium sought to impose on the Debtor a $545,000 assessment, representing its 25% proportionate interest in the Condominium based upon 100% of the amounts assessed.

39.  However, the Debtor disputes that it is responsible to pay for the assessments related to work performed to the solely the residential areas of the Condominium.

40.  Section 7(B) of the Condominium Declaration identifies and defines the "Exclusive Residential Limited Common Elements" as the two specified roof areas of the Worth Street roof.  This area is for the exclusive use of residential Unit 5F and Unit 5R.  Section 7(B) similarly identifies the "Residential Limited Common Elements" in part, as the roof area on the Leonard Street Premises which is for the exclusive use of the Residential Unit Owners.  A copy of the relevant pages of the Offering Plan are attached hereto as **Exhibit F**.  In addition, attached hereto as **Exhibit G** is a copy of the Tax Map filed with the City of New York identifying the Leonard and Worth Street roofs.  The tax map identifies significant portions of the roofs of both premises as "Limited Common Elements" for which the commercial unit owners have no financial responsibility.

41.  The Condominium Offering Plan further provides that only the residential unit owners are responsible certain expenses.  Page 103 thereof, in relevant part, as follows:

> Maintenance, repair, and replacements in or to the Limited Common Elements as defined in the Declaration will be performed, except as provided below…(3) by the Board of Managers as an expense only to the Residential Unit Owners according to their pro rata percentages of Common Interest for all nonstructural, ordinary maintenance, repairs, and/or deck replacements of the roof terrace deck at 78 and 80-82 Leonard Street, which terrace is a Residential Limited Common Element for the Residential Unit Owners at 78 and 80-82 Leonard Street…

A copy of the pages 103 and 104 of the Offering Plan are attached hereto as **Exhibit H**.

42.  The work performed to the Leonard Street Roof and Worth Street Roof is nonstructural in nature, and consequently, Debtor is not responsible for payment of the assessments related to same.

43.  With respect to the portion of the assessment for work to the two elevators ($250,000), the Commercial Units do not have access to the two elevators, and are not financial responsible for improvements thereto.  In fact, Schedule B of the recorded

Condominium Declaration identifies the Common Elements to which each unit in the Condominium has access.  A copy of the schedule is attached hereto as **Exhibit I**.  As stated on the schedule, the four Commercial Units do not have access to the elevators, and consequently, are not responsible for improvements made thereto.

44.  Notwithstanding Debtor's challenge to the assessments imposed upon it, the Condominium filed liens against the four Commercial Units to recover the sums allegedly owed to it.

### The Disputed Assessment / Lien Foreclosure Action

45.  On March 7, 2016, the Condominium commenced the Disputed Assessment / Lien Foreclosure Action seeking to foreclose the liens filed by it against the Commercial Units. The Condominium is also seeking to recover legal and late fees, now alleged to be in excess of $1,200,000!  Debtor has asserted affirmative defenses, in part, challenging the validity of the assessments, as aforedescribed.

46.  On August 25, 2016, the Condominium filed a motion seeking to amend its Complaint, and for the appointment of a temporary receiver for the Commercial Units.  The Condominium's motion sought to have the temporary receiver pay the Condominium all amounts owed on account of the assessments, including past due amounts, notwithstanding that Debtor challenged the validity of such assessments.

47.  Debtor's opposition to the Condominium's motion asserted that a temporary receiver was not necessary nor proper by reason of the sufficient equity in the Commercial Units, as well as the fact that the Condominium failed to comply with the Condominium by-laws in securing approval for the work performed.  Debtor similarly asserted that if a temporary receiver was appointed he or she would only be entitled to collect and pay the Condominium

the amounts owed on a going forward basis.[1]  In addition, Debtor asserted that if a receiver was to be appointed, he or she should be directed to pay the outstanding mortgage, real estate taxes, and other charges related to the Commercial Units prior to paying the Condominium on account of the disputed assessments.

48.  The Debtor was therefore surprised on September 15, 2017, when State Court (J. Billings) issued an order (the "Receivership Order"), holding, in part:

> ORDERED, that at the request of the plaintiff or plaintiff's attorneys, the Receiver shall pay to plaintiff any and all rents received, which plaintiff shall not apply to any purpose other than charges in connection with the Commercial Units, which include common charges, assessments, water and sewer charges, late fees, attorney's fees and bank fees owed by LW Retail, **which have accrued and are presently due** and which shall become due, during the pendency of the of the Receivership......In the event any surplus remains from the rent collected, the Receiver shall apply it in the following priority to the following debts owed by LW Retail: real estate taxes, mortgage loan payments, and insurance premiums covering LW Retail's Commercial Units....
>
> [Emphasis provided]

49.  The Receivership Order directs the temporary receiver to collect 100% of the rents from the Commercial Unit tenants, and to pay them *only* to the Condominium to be applied to the disputed assessments, even though the dispute had not yet been adjudicated.

50.  This meant that the Debtor would have no funds to pay its mortgage, real estate taxes, insurance, and other obligations.

---

[1] As set forth in Debtor's opposition to the Condominium's motion, the purpose of the appointment of receiver would be to collect rent for the payment of ongoing common charges or assessments as they become due, not to apply them to arrears for past common charges or assessments, which the Condominium would recover if it was successful in the overall litigation. *Alexander Condominium, by its Board of Managers v. AB Funding Corporation,* 54 Misc. 3d 1206(A) (Sup Ct. New York County 2017) ("Defendants argue that plaintiff seeks the appointment of a receiver to be awarded the ultimate relief sought in this case while avoiding litigation over the disputed common charges.  The court agrees with this statement to the extent of deciding that plaintiff may collect reasonable rent for use and occupancy of the units during the pendency of this action but not for the satisfaction of arrears.")

51.  The Condominium cannot, in good faith, assert that Debtor is not in financial distress as a result of the Receivership Order.  By this point the amounts asserted by the Condominium included the original disputed assessments in the amount of $545,000, plus other shocking charges, including late fees in the amount of $1,159,592.07 and legal fees totaling $97,347.46.

52.  It became immediately apparent to the Debtor that it must seek chapter 11 protection to avoid defaulting on its financial obligations to other creditors, including the mortgage, real estate taxes, insurance premiums, and other charges.

**The Capital Reserve Action**

53.  As set forth above, in connection with the conversion of the Condominium, a Capital Reserve Fund of approximately $623,000 was created by the sponsor, SDS Leonard, LLC, to be used exclusively for capital repairs, replacements and improvements necessary for the health and safety of the occupants of the Condominium.  Page 129 of the Condominium Offering Plan provides, as follows:

> …Pursuant and subject to the above, at the First Unit Closing pursuant to the Offering Plan, the Board of Managers will retain a Reserve Fund established by the Sponsor.  This Reserve Fund is used for the purpose of funding to the Board of Managers the Residential Unit Owners' share of the cost of making capital repairs and improvements or for replacement items as determined by the Condominium Board or for funding repairs and improvements or replacement items of Common Elements which are the responsibility of the Condominium Board.

Copies of the relevant provisions of the Condominium Declaration are attached as **Exhibit J**.

54.  On May 20, 2015, Debtor commenced the Capital Reserve Action, alleging that the Board of Managers of the Condominium improperly diverted and wasted the monies in the Fund to cover its everyday operating expenses of the residential portions of the condominium, to which the Debtor, as owner of the Commercial Units, is not required to contribute.

55.  Debtor further alleges that, in an effort to replenish the Fund, which was required to be set aside and used solely for making necessary capital repairs, but which was not done so, the Condominium Board authorized excessive and unnecessary capital improvements, repairs and alterations to the Condominium in order to charge Debtor for such exorbitant assessments.  Such capital improvements, alterations, and repairs, which were then assessed against Debtor (and which form the basis of the Lien Foreclosure Action), were unnecessary, excessive, and imposed in a calculated effort to mask the Board's misappropriation of the Fund.

56.  Contrary to the Condominium's assertions, the Sponsor did not "spend down a significant portion of the reserve fund when it controlled the Board and/or when a management company affiliated or controlled by SDS Leonard managed the Condominium (¶19 of Condominium's motion), and the Condominium offers no proof to support such unsubstantiated allegations.  Similarly inaccurate is the Condominium's statement that trial in the Capital Reserve Action is scheduled for November 29, 2017.

**The Breach of Contract Action**

57.  The Condominium commenced the Breach of Contract Action on August 7, 2012 by filing of a Summons with Notice, alleging breach of contract, fraudulent conveyances and other causes of action related to purported hazardous and dangerous conditions caused in connection with the construction and conversion of the Condominium.

58.  More than two years later, following Sponsor's demand that the Condominium served its Complaint, on September 23, 2014, the Condominium filed its Complaint the against the Condominium Sponsor, SDS Leonard, LLC, the Debtor, and other individuals

alleged to have been involved in connection with the Condominium construction and

conversion process.[2]

59.   The Condominium's Amended Complaint, which was filed on October 28, 2016

asserts a laundry list of purported hazardous and dangerous conditions at the Condominium,

including, without limitation, defective fire pump, fire alarm system, and fire sprinkler

systems, improper ventilation, defective roof guardrails, and deteriorating roofs.

60.   These alleged hazardous and dangerous conditions directly relate to the assessments

filed by the Condominium that form the subject of the Disputed Assessments / Lien

Foreclosure Action and Capital Reserve Action.  On the one hand, the Condominium seeks to

recover damages for alleged hazardous and dangerous conditions, while at the same time

alleging they performed improvements to the Condominium to fix such alleged conditions

and seek to recover assessments for such work.  These cases are intertwined.

61.   The documentary evidence, including a December 17, 2013 report from the

Condominium's own consultant, undermines the allegations regarding hazardous and

dangerous conditions at the Condominium.  A copy of a representative portion of the

December 17, 2013 Zimmerman Report is attached hereto as **Exhibit K**.

62.   Documents produced in discovery reflect that the fire alarm system was in working

order following the Condominium conversion, further undermining the Condominium

assertions regarding the existence of hazardous and dangerous conditions, as well as the

issuance of an assessment relating to same.

---

[2] By Order dated April 15, 2015, Judge Anil Singh granted Sponsor, SDS Leonard's motion to dismiss the nine causes of action set forth in the Complaint against it.  By Decision and Order dated October 12 2016, the Appellate Division, First Department, reversed Judge Singhs's decision to reinstate the Condominium's claims against SDS Leonard, LLC for breach of contract and fraudulent conveyance only.

63.  The Condominium's assertion that there is certain façade damage is baseless. Attached hereto as **Exhibit L** is a June 11, 2009 letter from Structural Engineering Technologies, P.C. confirming the building is structurally sound, stating, in part:

> This is to confirm that the above referenced building, which was slightly damaged by the construction of a new building directly adjacent to it, is safe and structurally sound.  Only façade work is required.

64.  In addition, attached hereto as **Exhibit M** is a March 2, 2010 Notice of Mechanic's Lien filed by Edras Group Corp., reflecting that façade repairs at the Condominium were performed.

65.  The Condominium's motion further exaggerates its claims against Debtor by claiming that condominium unit owners have been unable to secure financing by reason of the Debtor's alleged failure to obtain a certificate of occupancy.  It is the Condominium that is required to correct certain outstanding violations before a certificate of occupancy can be issued.  The Debtor poses no barrier to this happening.

66.  Moreover, the Condominium's assertion that the unit owners cannot secure financing is simply not true.  Attached hereto as **Exhibits N** and **O** are a February 27, 2017 Mortgage and Consolidation, Extension and Modification Agreement entered into between Jill Van Berg (President of the Condominium Board) and MERS, as nominee for Morgan Stanley Private Bank, N.A..  These recorded mortgages demonstrate that the condominium unit owners are able to secure financing, and the fact that a certificate of occupancy has not been issued does not impact or affect the unit owners' ability to do so.

**Conclusion**

67.  Certainly, the Debtor has disputes with the Board and Condominium.  However, they are not the Debtor's only creditors or the only parties this Court should seek to protect.

## OBJECTION TO DISMISSAL AND ABSTENTION

### Not in the Best Interests of Creditors and the Estate

68.  The Motion fails to explain how dismissal could possibly be in the best interests of the creditor body as a whole, or of the estate.

69.  Bankruptcy Code §1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, **whichever is in the best interests of creditors and the estate, for cause** unless the court determines that appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate.

70.  The Board is seeking to dismiss this chapter 11 case so it can be the single creditor to divert 100% of the Debtor's rents into its own pocket.  Certainly, this result is not in the interests of all creditors.

71.  The Board's pursuit of the Debtor under a narrow provision of the Condominium Law that authorizes appointment of a Receiver without proof of mismanagement or wrongdoing, threatens to divert 100% of the Debtor's rents to the Board to be applied in any manner it wishes, including to the disputed assessments and outrageous alleged million+ dollars in legal fees and late fees.

72.  If this case was dismissed and the Board allowed to travel down this path, the Debtor would default in its mortgage and become unable to pay its real estate taxes, insurance, and other legitimate operating expenses.  This would cause a crisis for the Debtor's tenants and potentially disrupt their tenancy.

73.  Dismissal may be in the best interest of the Board because it would effectively cripple the Debtor's business operations and divert 100% of the Debtor's income into its own pocket, but dismissal certainly is not in the best interests of the creditors or estate.

74.  The Board's willingness to spend enormous resources on brining this Motion on such spurious grounds instead of engaging in productive discussions for resolution shows that the Board is only out for itself.  The Debtor's creditors and estate need the protections afforded by chapter 11 and the guidance of this Court to avoid devastating consequences for all.

### No "Cause" Exists to Dismiss

75.  The Motion also fails to present any "cause" for dismissal.  In fact, the Motion does not even address the indicia of "cause" laid out in Bankruptcy Code §1112(b)(4).  Rather, the Motion seeks the more drastic and rare finding of "bad faith", which the Debtor will address in the next section.

76.  In fact, none of the indicia of "cause" listed in in Bankruptcy Code §1112(b)(4) exist in this case.  Bankruptcy Code §1112(b)(4) defines "cause" as including –

(A) **Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.**

The Debtor has substantial equity in the Units, operates at a profit, has remained current on its post-petition liabilities, and has the ability to formulate a plan of reorganization for the benefit of all of its creditors as soon as its dispute with the Board is resolved.

(B) **Gross mismanagement of the estate.**

There is no such finding in the State Court.  To the contrary, the Debtor's responsible management of its affairs is clear from the fact it is current on the mortgage and owes only the most recent real estate tax payment which it was unable to pay because the Board forced the Debtor to seek chapter 11 relief.  The Motion makes uninformed allegations that the Debtor transferred funds to insiders pre-petition.  As explained at the §341 Meeting, it was the Debtor's practice pre-petition to transfer funds to an affiliate, SDS, which managed the Debtor's income and paid the Debtor's expenses on its behalf.  The Debtor does not continue that practice post-petition.  There is no mismanagement here, much less "gross" mismanagement.

**(C)  Failure to maintain appropriate insurance that poses a risk to the estate or to the public.**

The Debtor has appropriate insurance in place, and always has.  The Debtor provided proof of insurance to the U.S. Trustee's office.

**(D) Unauthorized use of cash collateral substantially harmful to 1 or more creditors.**

The Debtor promptly brought a motion for authority to use cash collateral, and reached a consensual budget and order with its secured creditor, National Bank of New York City.

**(E) Failure to comply with an order of the Court.**

The Debtor has complied with all orders of this Court.

**(F)  Unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.**

The Motion is so premature, the first Monthly Operating Report is not even due.

**(G) Failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor.**

The Debtor appeared at the 341 Meeting.

**(H) Failure timely to provide information or attend meetings reasonably requested by the United States Trustee.**

The Debtor attended the Initial Debtor Interview requested by the United States Trustee, and provided all requested documents in advance of the meeting.

**(I)  Failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief.**

The next real estate tax payment becomes due in December 2017.  The Debtor included the payment as an item in its Budget approved by this Court.

**(J)  Failure to file a disclosure statement, or to file or confirm a plan within the time fixed by this title or by order of the court.**

It is so early in this chapter 11 case these deadlines are not yet established.

**(K) Failure to pay any fees or charges required under chapter 123 of title 28.**

No such charges are yet due.

**(L) Revocation of an order of confirmation under section 1144; (M) Inability to effectuate substantial consummation of a confirmed plan; (N) Termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (O) Failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.**

Each not applicable.

77.   Accordingly, no "cause" enumerated in Bankruptcy Code §1112(b)(4) exists to dismiss the chapter 11 case.

## The Chapter 11 Case Was Not Filed in "Bad Faith"

78.   Additional indicia of "cause" to dismiss a chapter 11 case have been developed through caselaw, including the concept of a "bad faith" filing.

79.   The Second Circuit established the factors to guide courts on whether a case has been filed in good faith in *In re C-TC 9th Avenue Partnership* (*C-TC 9th Avenue Partnership v. Norton Company*), 113 F.3d 13054 (2d Cir. 1997).   As detailed below, the factors raised in the Motion all weigh heavily in favor of finding the Debtor filed its chapter 11 case in "good faith".

80.   Most notably, where the Debtor has an honest intention to reorganize and the ability to do so, the case will not be dismissed for "bad faith".   See *In re Artisanal 2015, LLC,* 2017 WL 5125545 (S.D.N.Y. November 3, 2017) (denying motion to dismiss where the debtor had a chance to reorganize, even where bad faith factors were present).   Here, the Debtor has robust business operations and a strong potential to reorganize.   It cannot do so, however, without the protections of the bankruptcy court pending the resolution of its disputes with the Board.   Thus, the Board has failed to establish cause for dismissal.

81. The inquiry is highly factual and requires an examination of the circumstances of each case, as Your Honor emphasized in *In re Hartford & York LLC*, 2014 WL 985449 (Bankr. E.D.N.Y.):

> These factors guide courts in considering the question of whether a bankruptcy case has been filed in good faith, and assist courts in assessing the totality of the circumstances. Depending on the situation, one or another factor may have greater weight, and the number of factors on one side or the other of the balance is not, standing alone, determinative of the outcome.

*In re Hartford & York LLC*, at 5.

82. Dismissal was justified under circumstances in *C-TC 9th Avenue Partnership* where the debtor was a partnership in dissolution that had no intention of reorganizing. In fact, the Debtor was barred pre-petition from engaging in any business operations other than liquidating, and during the chapter 11 case failed to pay its property and other taxes.

83. Dismissal was also justified in *Hartford & York LLC* where 98% of the secured debt belonged to the creditor seeking dismissal, with only one unsubstantial unsecured creditor, the chapter 11was filed one hour before a mortgage foreclosure sale, and the debtor had no hope of reorganization.

84. In stark contrast, the Debtor has robust business operations. The Debtor has the desire and ability to reorganize. The Debtor has many other creditors and parties in interest who would be significantly harmed without the protections of chapter 11. The Debtor has taken steps to ensure its budget includes payment of its taxes and all other post-petition obligations. The Debtor's mortgage is current and the mortgagee supports this chapter 11 case. Perhaps most significant, the <u>Debtor is current with its monthly pre- and post-petition common charge payments to the Board and Condominium</u>, except for the disputed assessments.

85.  More applicable here is the Second Circuit's decision in *In re Cohoes Industrial Terminal, Inc.*, 931 F.2d 222 (2d Cir. 1991).  There, the Second Circuit acknowledged that although the debtor's admitted purpose was to attack a State court judgment and to obtain related relief from creditor demands, the case was not filed in bad faith because the debtor had "some intention of reorganizing."  Id at 228.

86.  In this case, there is no State court judgment or determination of the Debtor's alleged liability.  The Motion repeatedly states the Debtor filed chapter 11 to relitigate a state court judgment, but that simply is not true.  The chapter 11 case was concededly a reaction to the Board's pursuit of a Receiver to take 100% of the Debtor's rents and put them in the Board's pocket.  However, the Debtor legitimately filed this case to protect its assets for the benefit of all of its creditors.

87.  Addressing each of the *C-TC 9th Avenue Partnership* factors raised by the Board:

**The Debtor has only one asset.**

The Board completely misses the mark on this factor. The Debtor owns four separate commercial condominium units.  Assets include valuable leases with tenants who are interested parties, one of whom has appeared in this case through counsel, and almost $450,000 in accounts receivable.  The Debtor's operations are run as a single project, but that does not mean the Debtor has only one asset.

**The Debtor's financial situation is a two party dispute that can be addressed in a foreclosure action.**

The Debtor has a complex financial situation involving many creditors, and most notably its mortgagee, National Bank of New York City, which supports the chapter 11 case.  The Debtor's financial situation is far from a two-party dispute.

**The timing of the bankruptcy case evidenced the Debtor's intent to frustrate the Condominium's rights as secured creditor.**

The dispute with the condominium has not yet been adjudicated.  Nor is there any looming foreclosure.  The Debtor's legal objections to the disputed assessments are very substantial, real defenses.  The timing of the bankruptcy was to protect the

Debtor's assets for the benefit of all of its creditors pending the continued adjudication of the highly disputed claims of the Board.

**The debtor has no employees.**

The Debtor's pre-petition practice was to have SDS Leonard manage its income and pay its expenses. The Debtor relied SDS's employees to perform its operations. Now, the Debtor is operating under chapter 11 and the situation is different.

**Consideration of the totality of the Circumstances**

The Board's protests of its inability to meet its own expenses are belied by the Board's refusal to accept the Debtor's offer in the State court to tender $225,000 pending good faith discussions concerning resolution of the dispute. There is no harm to the Condominium going forward, as the Debtor has always paid its regular monthly condominium charges, both pre- and post- petition.

### The *Sletteland* Appeal Bond Issue is a Red Herring

88. The Board incorrectly asserts that the Debtor's sole reason for filing chapter 11 was to avoid posting a bond for an appeal from the Receiver Order.

89. This is a red herring. There is no need for the Debtor to appeal the Receiver Order because it is superseded by Bankruptcy Code §543(b), which requires any Receiver to turn over all property of the Debtor.

90. Furthermore, the Receiver was never actually in place. Although the Receiver Order was entered, the Receiver never posted a bond or did any of the other things necessary to qualify him as a Receiver or entitle him to control any of the Debtor's property.

91. The purpose of the chapter 11 filing was to protect the Debtor's assets for the benefit of the estate as a whole and to avoid falling into default on the mortgage. Accordingly, there are no grounds to dismiss this case.

### The Court Should Not Abstain

92. The Motion asks the Court to abstain from exercising jurisdiction over this chapter 11 case pursuant to 11 U.S.C. §305, which, like 11 U.S.C. §1112(b)(4), considers what is in

the best interest of the creditors and the debtor.  For all of the reasons set forth above, there is

no reason for this Court to abstain from this chapter 11 case.

## OBJECTION TO ABSTENTION OR REMAND OF THE ACTIONS

93.   The Court is referred to the Debtor's procedural objections that (i) the actions in

which this Court is asked to enter remand orders are not pending before this Court, and (ii) the

defendants in those actions were not served with the Motion.

94.   Putting aside those issues, once the actions are before this Court and due process is

provided to all defendants, the Court should find that remand is not appropriate in this case

because the actions are "related to" the bankruptcy case.

95.   The Condominium's protests of "further delay" in the litigations are without merit.

This Court is best situated to swiftly resolve all issues. The actions essentially involve the

same dollars and the same issues.  However, they were previously pending in three different

places.  What better place than the Bankruptcy Court to avoid "further delay".

96.   This Court has jurisdiction over the actions because the claim "arises in" the

bankruptcy case.  The Debtor's property is subject to the protections of the Bankruptcy Code.

The Board is seeking both to lien the debtor's real property as well as making claim to seizing

the Debtor's cash (rents) property.  As such, the claims between the parties concerning the

right to control the Debtor's property "arise in" the bankruptcy case.  The Board's attempts to

control and divert the Debtor's rental income to itself constitute a violation of the Order for

Relief and the automatic stay.  This goes to the core jurisdiction of the Court to determine the

nature, extent and nature of any lien on the Debtor's property.

97.   This Court also has jurisdiction over the actions because the claim "relates to" the

bankruptcy case.  This jurisdiction contemplates any conceivable effect on the administration

of the estate.  The liens improperly placed on the Debtor's real property based upon invalid assessments, and the attempt to divert 100% of the Debtor's income, causing it to default in its mortgage and other obligations are clearly "related to" the administration of this case.

98.  As such, if and when the actions are before this Court, they will be here properly.

99.  It is not possible to adjudicate the actions in the state court in a timely fashion.  The actions are pending separately.  Here, they will be adjudicated together in a more efficient, streamlined manner.  Inability to adjudicate the matters in the State court in a timely fashion justifies this Court exercise jurisdiction over the actions.

100.  The asserted liens on the Debtor's property, and asserted rights to divert 100% of the Debtor's rents to the Board's pockets invoke core bankruptcy issues with respect to the administration of the estate, and of the Debtor's property.  As such, this Court should not abstain from presiding over the actions if and when they are before the Court.

101. The Debtor preserves its rights to present further written arguments to this Court concerning abstention and remand if and when the other parties to the actions are provided with due process, and if and when the actions are pending before this Court.

**OBJECTION TO LIFTING THE AUTOMATIC STAY**

102.  If the actions are remanded, the Motion seeks relief from the automatic stay to continue to litigate the actions.

103. For all of the procedural and substantive reasons set forth above, this Court should not enter orders in actions not pending before it, remanding said actions to State court.

104. However, if this Court does enter such orders, the Debtor asserts that adjudication in the State Court would prejudice other creditors to the extent the Board seeks to deny the

Debtor the ability to pay its mortgage and other expenses.  Judicial economy dictates that the actions should be litigated within the Bankruptcy Court.

## OBJECTION TO THE RECEIVER REMAINING IN PLACE

105. The Receiver was never in place.

106. The Receiver Order specifically requires the Receiver:

That before entering upon the duties of this trust, that the said Receiver advise plaintiff's attorneys of his appointment, and that the said Receiver execute to the People of the State of New York and file with the Clerk of the Court, as surety company bond …

107. The Receiver never undertook these acts, and therefore was never authorized to undertake any duties.

108. In *In re Dill* (*Dill v. Dime Savings Bank, FSB*), this Court expressed several factors the Court may consider in determining whether the best interests of the creditors would be served in excusing a receiver's obligation to comply with Bankruptcy Code §543(b).  Those factors include:

**Whether there will be sufficient income to fund a successful reorganization**

The Debtor's financials demonstrate sufficient income and sufficient equity in the Commercial Units to successfully fund a plan.  Thus, there is no reason for a receiver to be in control of the Debtor's property.

**Whether the debtor will use the turnover of property for the benefit of creditors**

The Debtor will do so.

**Whether there has been mismanagement by the debtor.**

There has been no mismanagement, nor has any been alleged.  The Debtor is current on its mortgage.  It has several creditors, but they will all be paid in full under the Debtor's plan.

**Whether or not there are avoidance issues with respect to property retained by a receiver**

There are no such issues because the receiver was never in place and never possessed any property of the Debtor.

109. The Debtor's largest creditor, National Bank of New York City, supports the chapter 11 case.  No mismanagement or wrongdoing has ever been asserted against the Debtor.  The Debtor is in full compliance with its obligations under chapter 11, and has paid all of its post-petition bills, including common charges to the Board.

110. Accordingly, there is no reason for the receiver to be "kept in place", when he was never qualified or in place in the first instance.

111. To do so would be a waste of the Debtor's resources and to the detriment of all creditors

WHEREFORE, the Debtor respectfully requests the Court deny the Motion in its entirety and for such other and further relief as the Court deems appropriate.

Dated:  White Plains, New York
            November 14, 2017

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor*

_____/s/  *Dawn Kirby*_____
By: Dawn Kirby
        One North Lexington Avenue
        White Plains, New York 10601
        (914) 681-0200