Jonathan L. Flaxer, Esq.
Michael S. Weinstein, Esq.
GOLENBOCK EISEMAN ASSOR BELL
 & PESKOE LLP
711 Third Avenue
New York, New York 10017
(212) 907-7300

**Hearing Time:**
**December 7, 2017 at 10:30 a.m.**

*Counsel for Loft Space Condominium*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re                                                            :
                                                                 :        Chapter 11
LW RETAIL ASSOCIATES LLC,                                        :
                                                                 :        Case No. 17-45189 (ESS)
                                         Debtor.                 :
---------------------------------------------------------------X

**REPLY OF LOFT SPACE CONDOMINIUM IN FURTHER SUPPORT OF MOTION
SEEKING (I) TO DISMISS THE DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11
U.S.C. § 1112, (II) FOR THE COURT TO ABSTAIN FROM AND DISMISS THE
DEBTOR's CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 305, (III) TO REMAND
THREE LITIGATIONS BACK TO THE STATE COURT AND FOR RELIEF FROM
THE AUTOMATIC STAY TO CONTINUE THOSE LITIGATIONs, OR
 (IV) TO LEAVE THE RECEIVER IN PLACE PURSUANT TO 11 U.S.C. §543**

Loft Space Condominium (the "**Condominium**"), by its Board of Managers (the

"**Board**"), and by and through its undersigned counsel, hereby submits this reply (A) in further

support of the motion (the "**Motion**") [Dkt. No. 33][1] seeking an order (i) dismissing this

bankruptcy case pursuant to section 1112(b) of chapter 11, title 11, United States Code (the

"**Bankruptcy Code**");  or in the alternative, (ii) abstaining from and dismissing this bankruptcy

case pursuant to section 305 of the Bankruptcy Code; or in the alternative, (iii) pursuant to 28

U.S.C. 1334 and 28 U.S.C. §1452(b), abstaining from and/or remanding three litigations between

the above-captioned debtor (the "**Debtor**") and the Condominium to the New York state court,

_____

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2915406.7

and, pursuant to section 362(d) of the Bankruptcy Code, granting relief from the automatic stay to complete those litigations; or in the alternative, (iv) pursuant to section 543(d) of the Bankruptcy Code, authorizing the state court receiver to collect rent on behalf of the Debtor, and (B) in response to the objection to the Motion, dated November 14, 2017 [Dkt. No. 40] (the "**Objection**"), by the above-captioned debtor (the "**Debtor**") and the objection to the Motion, dated November 14, 2017 [Dkt. No. 39] (the "**Bank Objection**") by National Bank of NYC (the "**Bank**").

## RESPONSE TO DEBTOR'S OBJECTION

I.    **THE *C-TC* AND *SLETTELAND* FACTORS STRONGLY SUPPORT DISMISSAL**

(A)    **THE DEBTOR'S ATTEMPT TO DISTINGUISH THE *C-TC* FACTORS FAILS**

1.    The Debtor makes little effort to refute the Motion or the application of the Second Circuit's *C-TC* factors.   The Objection does not meaningfully dispute that the Debtor's financial situation arises from a two-party dispute that could be addressed in the Actions, nor the financial harm to the Condominium resulting from the Debtor's non-payment.  Moreover, the Objection concedes that this bankruptcy case is a direct result of the order of the State Court appointing a receiver.   Additionally, the Debtor cites almost no case law or other authority supporting its contentions.

2.    Rather, the Debtor attempts to recast the actual facts in a disingenuous fashion to distinguish the *C-TC* factors.  For example, the Objection states that the Debtor's case is not a single asset case.  Objection at ¶87.  This, however, is directly contradicted by the Debtor's request for treatment as a single asset real estate case.  *See* Debtor's Motion to Use Cash Collateral [Dkt. No. 5] ("**Cash Collateral Motion**"), at ¶5 ("[t]he Debtor is a Single Asset Real Estate debtor as defined in 11 U.S.C. §101(51B)").  The Debtor cannot have it both ways, and it

is estopped from taking a position contrary to the representation made to the Court in the Cash Collateral Motion.   Moreover, the fact that there are four Units is a distinction without a meaningful difference.   The Debtor's asset consists of four Units in a single building.   Its contention is akin to arguing that a single rental building is not a single asset because there are multiple rental units.

3.      The Objection also contradicts itself by disputing that the Debtor has no employees despite the fact that the Debtor has not identified any employees and the Debtor's cash collateral budget does not provide for payment to any employees.   Objection at ¶87.   *See also* First Interim Order Authorizing the Use of Cash Collateral [Dkt. No. 30] (authorized to use Cash Collateral in accordance with the budget annexed to the motion); Cash Collateral Motion, Exhibit G (proposed budget).

4.      In addition, the Objection gives the misimpression that there are "many" creditors that need to be protected.   *See* Objection at ¶¶84, 87.   "Many" is defined as "consisting of or amounting to a large but indefinite number."   "Many." Merriam-Webster.com, accessed November 28, 2017, https://www.merriam-webster.com/dictionary/many.   Aside from the Condominium and the Bank, the Debtor has identified six other creditors.   By definition, that is not "many" creditors, and the Debtor elsewhere states that it has only "several" creditors.   *See* Objection at ¶108.   Further, as set forth in the Declaration of Michael Weinstein, annexed hereto as Exhibit A, at least one of the listed creditors has stated that it has not heard of the Debtor and has no knowledge of a claim against it.

**(B)      THE OBJECTION FAILS TO ADDRESS THE TRANSFERS TO INSIDERS**

5.      By contending that the Receiver Order is the source of its alleged distress, the Debtor confuses effect with cause.   The cause of any financial distress of its own making:  (i)

refusal to pay common charges resulting in accrual of late charges, and (ii) transfers of more than $1 million to insiders just within the last year.  The Objection fails to even mention these transfers, which funds would have been more than sufficient to make mortgage payments and pay real estate taxes for at least a year while the receiver was collecting rent.  The Debtor cannot voluntarily empty its bank account and then cry poverty.

### (C)  THE DEBTOR CONCEDES THAT ITS BANKRUPTCY CASE IS INTENDED TO FRUSTRATE THE STATE COURT'S ORDER

6.      According to the Debtor, "the chapter 11 case was concededly a reaction to the Board's pursuit of a Receiver."  Objection at ¶86.  Yet, the Debtor asserts that the *Sletteland* factors are irrelevant because the Debtor filed for chapter 11 before the receiver could obtain a bond in order to qualify him as a receiver and before the Debtor had to seek a stay (and a commensurate bond) pending an appeal of the Receiver Order.   The Objection misses the point.  The *Sletteland* factors were designed to address this exact circumstance – a debtor seeking bankruptcy relief to avoid the adverse consequences of a state court decision.  In the Foreclosure Action, the Debtor fully litigated whether a receiver should be appointed and, if so, how the receiver should apply collected rent.   The Debtor lost, but instead of exhausting its remedies before the State Court, the Debtor seeks to avoid the effectiveness of the Receiver Order, including the need to post a bond to obtain a stay pending appeal, by filing this bankruptcy case.  There is no reason for this Court to second guess the State Court's decision and permit this collateral attack on the Receiver Order.

7.      Nevertheless, in order to assuage any concerns regarding the impact of the Receiver Order, as a condition to dismissal of this bankruptcy case, the Condominium would not object to an amendment to the Receiver Order that would permit the receiver to pay debt service, real estate taxes, current common charges, and insurance premiums before application of the

balance of the collected rent to the Condominium's past due common charges and any other fees or amounts owed to the Condominium.

## II.    THE COURT MUST REMAND THE ACTIONS AND SHOULD GRANT STAY RELIEF

8.    Once the Actions are before this Court, the Court must abstain and the Actions must be remanded.[2]  As set forth in the Motion, the Court must abstain and the Actions must be remanded because: (1) the Condominium's motion to abstain is timely, (2) the Actions are all based on state law claims, (3) none of the Actions "arise in" or "arise under" the Bankruptcy Code, (4) Section 1334 provides the sole basis for jurisdiction, (5) the Actions have already been commenced in State Court, and (6) the Actions can be timely adjudicated in State Court.  *See In re Int'l Tobacco Partners, Ltd.*, 462 B.R. 378, 390 (Bankr. E.D.N.Y. 2011) (citation omitted).

9.    The Objection does not delineate between mandatory and permissive abstention. It appears that the Objection does not meaningfully dispute permissive abstention and, with respect to mandatory abstention, the Objection only contests (i) whether the Actions "arise in" this bankruptcy case, and (ii) whether they can be timely adjudicated in State Court.  As set forth in the Motion, proceedings "arise in" a bankruptcy case when the proceedings "would have no existence outside of the bankruptcy."  *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).  Each of the Actions was filed prior to this bankruptcy case, and undoubtedly has an existence outside of the bankruptcy.  The Debtor provides no authority to the contrary.

10.    Further, as set forth in the Motion, the Court should presume that the State Court will operate efficiently and effectively in adjudicating the Actions.  *See In re AOG Entm't, Inc.*,

---

[2] The Debtor has sought removal of each of the Actions to this Court.  *See* Exhibit B annexed hereto.  In the Motion, the Condominium acknowledged that the Actions are not yet before this Court, and that, in the interest of judicial efficiency, the Condominium consented to removal of the Actions to this Court solely for the purpose of an efficient determination of remand rather than seeking remand of each Action separately.  *See* Motion, fn. 9.

569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017).   The Debtor's unsupported assertion to the contrary cannot overcome this presumption nor does it reflect the facts.   For example, the Disputed Reserve Action would have already been tried on November 29th but for this bankruptcy case. Once again, the Debtor provides no legal authority to support its argument.

11.    Accordingly, for the reasons set forth in the Motion and herein, abstention is mandatory under 28 U.S.C. §1334(c)(2) and appropriate under 28 U.S.C. §1334(c)(1).

## III.    RATHER THAN ADDRESSING THE FACTS AND LAW, THE OBJECTION ATTEMPTS TO MISLEAD THE COURT

12.    The Objection primarily consists of a litany of misrepresentations evidently designed to obscure the actual facts and avoid the consequences therefrom.

### (A)    THE DEBTOR MISREPRESENTS THE CONDITIONS AT THE PREMISES

13.    The Objection twice misrepresents the conditions at the Condominium.   The Debtor incorrectly contends that the Zimmerman Report by the Condominium's consultant, a portion of which is annexed as Exhibit K to the Objection, undermines the Condominium's assertion of hazardous and dangerous conditions at the Condominium.   Objection at ¶43. Section II of the executive summary to the Zimmerman Report, however, lists several hazards under the title "Life Safety Issues."   Apparently, the Debtor's position is that hazards identified as "Life Safety Issues" are neither dangerous nor hazardous.

14.    Additionally, despite significant evidence to the contrary, the Debtor also incorrectly asserts that the façade was only "slightly damaged."   Objection at ¶63.   As set forth in the Motion, Leonard Street LLC, a predecessor to the Debtor that was also owned by the Debtor's principal, received over $430,000 in insurance proceeds related to damage to the façade, an amount which belies any notion of "slight" damage.   Indeed, in a subsequent action by Leonard Street LLC's insurance company, as subrogee, to recover from the insurer for the

adjoining landowner that caused the damage, Louis Greco Jr., the Debtor's principal, affirmed that the Condominium sustained "extensive structural damage to the façade and residential upper floors and roof."[3]  It is thus clear that the Debtor is again propagating a baseless position.

      **(B)**      **THE DEBTOR AGREED TO A TRIAL DATE IN THE DISPUTED RESERVE ACTION**

      15.      The Debtor disputes that the Disputed Reserve Action was scheduled for trial on November 29, 2017.   Objection at ¶63.  As set forth in the so-ordered stipulation annexed hereto as Exhibit D, the Debtor stipulated and agreed to a trial on November 29, and the State Court so-ordered such stipulation.  The Debtor's statement is plainly untrue.

      **(C)**      **THE DEBTOR IS FEIGNING SURPRISE AT THE OUTCOME OF THE FORECLOSURE ACTION**

      16.      The Objection asserts that the Debtor was "surprised" when the Receiver Order provided that the receiver could apply collected rent to both ongoing and past due obligations to the Condominium.  Objection at ¶48.   The result was no surprise, however.  As part of its motion, the Condominium requested payment of ongoing and past due obligations, and the Debtor acknowledges that it contested that relief.  Objection at ¶47.   After considering the Debtor's and the Condominium's respective positions in the course of several hearings over many months, the State Court ultimately agreed with the Condominium in issuing the Receiver Order.   The Debtor may have sought a different result, but it could not have been surprised.

      **(D)**      **THE FORECLOSURE ACTION IS BASED UPON VALID LIENS; THE DEBTOR HAS FAILED TO PAY REGULAR MONTHLY COMMON CHARGES**

      17.      The Debtor contends that the liens that precipitated the Foreclosure Action are somehow invalid and that, other than the assessments it has not paid, the Debtor has paid all

---

[3] The Affidavit of Louis V. Greco, Jr., dated December 28, 2010, was produced during discovery in the Actions, and is annexed hereto as Exhibit C.

other common charges.  *See* Objection at ¶¶63, 84, 97.   Neither of the foregoing contentions is true, however.

18.    The Condominium is entitled to a lien for unpaid common charges upon the filing of a notice of lien containing the information required by the statute.  *See* N.Y. R.P.L. §§339-z, 339-aa.   The Objection does not dispute that the Condominium properly filed notices of liens. Further, as set forth below, the Debtor does not dispute that a portion of the assessments are not subject to any defenses.   Because some of the assessments are indisputably valid, the Debtor has no grounds to dispute the validity of the lien itself.

19.    Moreover, the liens are also based upon the Debtor's failure to pay certain common charges unrelated to the assessments.  As set forth in the Schlossberg Declaration, as of October 31, 2017, the Debtor had failed to pay $43,718.97 in non-assessment common charges (not including late fees and attorneys' fees that would be added thereto).  The Debtor's refusal to accept the validity of the Condominium's liens is contrary to both the facts and state law.[4]

**(E)    SETTLEMENT OFFERS ARE NOT RELEVANT**

20.    The Objection improperly discusses certain settlement discussions that occurred prior to the commencement of this case, which are not relevant to the Motion and should be disregarded.

**IV.    THE DEBTOR'S MERITLESS DEFENSES TO THE ASSESSMENTS**

21.    Although the relative merits of the Debtor's defenses to the assessments are not relevant here and should be left to the State Court to resolve, since those defenses have been

---

[4] The Condominium notes that, while the Debtor complains about the unfairness of the late fees, the Debtor has never taken any steps to avoid or limit the occurrence of such late fees.   The Debtor could have avoided the incurrence of late fees by paying the disputed assessments, which is required by Article VI, Section 4 of the By-Laws, or seeking a stay from the State Court of its obligation to pay the assessments pending a determination of their validity.   Alternatively, the Debtor could have limited the incurrence of late fees by paying the undisputed portion of the assessments, which is approximately half.   Instead, the Debtor simply refused to pay undisputed or disputed amounts, and let the late fees accrue.

raised in the Objection, the Condominium responds so as not to leave any impression that the

Debtor's defenses are anything other than meritless.

### (A) THE DEBTOR IS RESPONSIBLE FOR ITS SHARE OF THE ASSESSMENT ATTRIBUTABLE TO REPLACING THE ROOF

22.    One of the assessments that the Debtor contests is the replacement of the leaking

roofs of both buildings.  The Debtor contends that it has no responsibility to pay for any of this

cost based on its assertion that (i) a portion of the roof constitutes a "Limited Common Element,"

and (ii) replacement of the roof is a "nonstructural."  Objection at ¶¶40-42.  Both of these

contentions are plainly wrong.

23.    Section 7(A)(2) of the Condominium's Declaration[5] provides that the "roofs,

excluding any roof terraces allocated to specific units" are part of the General Common

Elements.  Article VI, Section 10(b) of the By-Laws provides that "[a]ll maintenance, repairs and

replacements to the General Common Elements as defined in the Declaration shall be made by

the Board of Managers and be charged to all the Unit Owners as a Common Expense."[6]   Article

VI, Section 10(b) of the By-Laws further provides that repairs to any portions of the roof that

may be a Limited Common Element is a Common Expense "if such Limited Common Element

involves structural or extraordinary maintenance, repairs or replacements (including, but not

limited to, the repair of any leaks that are not caused by the acts or omissions of the Unit Owner,

having direct and exclusive access thereto)."  The only exception is for "all nonstructural

ordinary maintenance, repairs or replacements of the roof terrace/deck…which terrace and/or

deck is a Residential Limited Common Element."

---

[5] The Condominium's Declaration and By-Laws was annexed as Exhibit 1 to the Schlossberg Declaration.

[6] The Objection cites to the Condominium's Offering Plan, but the By-Laws take precedence over the Offering Plan.

24.     It is beyond dispute that replacement of both roofs to fix the leaks is both structural and extraordinary, and therefore a Common Expense for which the Debtor is responsible.  Further, the notion that the Debtor is not responsible for any portion of the cost to replace the roofs because portions of the roof may be a Limited Common Element is ludicrous.  Thus, there is no question that the Debtor is responsible for the roof replacement, and its assertion to the contrary is entirely without merit.

### (B)     THE DEBTOR IS RESPONSIBLE FOR ITS SHARE OF THE ASSESSMENT ATTRIBUTABLE TO REPAIRING THE ELEVATORS

25.     The Debtor's defense to the assessment arising from the Condominium's elevator repair is also without merit.   Objection at ¶43.  Section 7(A)(8) of the Condominium's Declaration provides that "[t]he elevator, elevator shaft, elevator pit, elevator machine room, elevator equipment and elevator bulkhead" in the two buildings are part of the General Common Elements.  As set forth above, the Debtor is thus responsible for its share of the elevator repair as a Common Expense.

26.     The Debtor nevertheless asserts that it is not responsible for the elevator repair assessment because it has no access to the elevators according to Schedule B of the Declaration, which is annexed as Exhibit I to the Objection.   Schedule B, at best, states that the Debtor does not have immediate access to the elevator, not that it has no access.  Whether the Debtor has access, however, is irrelevant.  The Debtor does not refer to any portion of the By-Laws that would absolve it of responsibility for repairs to General Common Elements to which it does not have immediate access.   In fact, Article VI, Section 5 of the By-Laws provides that "no Unit Owner shall be exempted from liability for the payment of Common Charges, including Assessments and/or Special Assessments, by waiving the use or enjoyment of any or all of the

Common Elements…".   Thus, under the By-Laws, the Debtor has no basis to refuse to pay for the elevator repair assessment.

27.     In any event, the Debtor in fact has access to the elevators.   The Condominium has three elevators – a service elevator in the Leonard Street building that does not go above the ground level and an elevator in each of the Condominium buildings that services the entire building.   Annexed hereto as Exhibit E is an agreement among the Board and certain of the Debtor's tenants concerning the use of the service elevator.  Moreover, some of the Debtor's tenants have placed equipment on the roof and use the non-service elevator(s) to access such equipment.  The Debtor thus does, in fact, have access to the elevators.

**(C)     THE DEBTOR DOES NOT CONTEST CERTAIN PORTIONS OF THE ASSESSMENTS**

28.     The Condominium notes that the Debtor's (meritless) defenses only address some, but not all, of the repairs completed pursuant to the assessments, but nevertheless Debtor has not paid its share of the assessments it does not contest.

## RESPONSE TO BANK OBJECTION

29.     The Bank Objection asserts that the bankruptcy case should not be dismissed because the Receiver Order does not permit the receiver to pay debt service to it from the collected rents.   The Bank, however, is a party to the Foreclosure Action, had notice of the Condominium's efforts to obtain a receiver and had the opportunity to oppose that relief in the State Court.  It, however, did not oppose the entry of the Receiver Order.  Having failed to pursue or protect its rights in the State Court, the Bank should not be heard to complain before this Court about the Receiver Order.

30.     Despite the foregoing, as set forth above, the Condominium would not object to modifying the Receiver Order to permit debt service payments, ongoing common charges, real

estate tax payments, and insurance premium payments as a condition to dismissal. *See supra* ¶7.

This would address any concerns of the Bank.

## Conclusion

For all of the foregoing reasons, the Condominium respectfully requests that this Court

overrule the Objections in all respects, and grant the relief requested in the Motion.

Dated: New York, New York
      December 4, 2017             Respectfully submitted,

                            GOLENBOCK EISEMAN ASSOR BELL
                              & PESKOE LLP
                            711 Third Avenue
                            New York, New York 10017
                            Tel: (212) 907-7300
                            Fax:  (212) 754-0777

                            By:    /s/ Jonathan L. Flaxer
                                  Jonathan L. Flaxer, Esq.
                                  Michael S. Weinstein, Esq.

                            *Counsel for Loft Space Condominium*